TILL LAW GROUP
James E. Till (State Bar No. 200464)
120 Newport Center Drive
Newport Beach, CA 92660
Telephone: (949) 524-4999
Email: james.till@till-lawgroup.com

Attorneys for CCC Consulting Corporation,
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:22-bk-16853-WB |
| CCC CONSULTING CORPORATION, | Chapter 11 |
| Debtor and Debtor-in-Possession. | Subchapter V |
| | **NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11, DATED DECEMBER 15, 2023; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Plan Confirmation Hearing: <br> Date:       February 15, 2024 <br> Time:       10:00 a.m. <br> Place:      Courtroom 1375 <br>               United States Bankruptcy Court <br>               255 E. Temple St. <br>               Los Angeles, CA 90012 |

**TO THE HONORABLEJULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST:**

   **PLEASE TAKE NOTICE** that at a hearing on November 2, 2023, at 10:00 a.m. in Courtroom 1375 of the above-entitled Court, before the Honorable Julia W. Brand, United States

1

Bankruptcy Judge, the Court issued certain dates/deadlines regarding confirmation of Debtor and Debtor-in-Possession CCC Consulting Corporation's Second Amended Plan of Reorganization for Small Business Under Chapter 11, dated December 15, 2023 (the "Scheduling Order"). Specifically, a hearing will be held on **February 15, 2024 at 10:00 a.m.**, before the Honorable Julia W. Brand, United States Bankruptcy Judge, in Courtroom 1375 at the United States Bankruptcy Court, 255 E. Temple St., Los Angeles, CA 90012, to consider the motion (the "Motion") of CCC Consulting Corporation, debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case,[1] for an order confirming the Debtor's *Second Amended Plan of Reorganization for Small Business Under Chapter 11, dated December 15, 2023* (the "Plan") [Dkt. No. 114], pursuant to Sections 1129 and 1191 of Title 11 of the United States Code (the "Bankruptcy Code").

This Motion is based upon the foregoing, the attached Memorandum of Points and Authorities, Debtor's Declaration in Support of Confirmation of the Plan, filed concurrently herewith, all other pleadings and papers on file in this case, the arguments and representations of counsel, and any oral or documentary evidence that may be properly presented to this Court at or before any hearing or ruling on the Motion.

**WHEREFORE**, the Debtor requests that this Court enter an order confirming the Plan, and granting such other and additional relief as the Court deems just and proper.

Dated:  January 30, 2024                          TILL LAW GROUP


                                                  By:   /s/ James E. Till
                                                        James E. Till

                                                  Attorneys for Debtor and Debtor-in-Possession,
                                                  CCC Consulting Corporation

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Plan.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................9

II.    BACKGROUND ................................................................................................9

    A.    Debtor and Events Leading to the Commencement of the Bankruptcy Case............9

    B.    The Bankruptcy Case ........................................................................10

    C.    Negotiations with the Judgment Creditors and the Plan ..........................................10

    D.    Summary of the Structure of the Plan ........................................................10

III.    THE PLAN COMPLIES WITH ALL APPLICABLE PROVISIONS OF
SECTION 1191(b) OF THE BANKRUPTCY CODE ........................................11

    A.    The Plan Complies with the Applicable Provisions of Title 11
(Section 1129(a)) ................................................................................12

    B.    The Plan Complies with the Classification Requirements of
Section 1122 ........................................................................................12

        1.    Secured Claims ........................................................................12

        2.    Priority Unsecured Claims ........................................................13

        3.    General Unsecured Claims ........................................................13

        4.    Interests ....................................................................................13

    C.    The Plan Includes All Provisions Mandated by Code Section 1123(a)..................13

        1.    Designation of Classes of Claims and Interests (Section 1123(a)(1)) .........13

        2.    Specification of Unimpaired Classes (Section 1123(a)(2)) .........................14

        3.    Specification of Treatment of Impaired Classes (Section 1123(a)(3)) ........14

        4.    Provide Same Treatment for Each Claim or Interest Within a
Class (Section 1123(a)(4)) ........................................................15

        5.    Adequate Means for Implementation of the Plan (Section 1123(a)(5)) ......15

        6    Charter of Reorganized Debtor (Section 1123(a)((6))................................15

        7.    Selection of Officers and Directors (Section 1123(a)(7))............................16

    D.    The Plan Contains Provisions Permitted by Code Section 1123(b) ......................16

        1.    Impairment/Nonimpairment (Section 1123(b)(1)) .....................................16

        2.    Assumption/Rejection of Executory Contracts and Unexpired
Leases (Section 1123(b)(2))........................................................16

        3.    Settlement and Compromise (Section 1129(b)(3)(A)) ................................17

        4.    Modification of Rights of Holders of Claims (Section 1123(b)(5)) ............17

        5.    Other Appropriate Provisions (Section 1123(b)(6)) ...................................17

E.    The Plan is Proposed in Good Faith (Section 1129(a)(3)).........................17

F.    The Plan Provides for Court Approval of Fees and Costs
Paid by the Estate (Section 1129(a)(4)) ...........................................18

G.    The Plan Complies with Section 1129(a)(5) Regarding the
Identity of Officers, Directors, and Insiders ...................................19

H.    The Plan Does Not Require Approval of Any Regulatory
Commission (Section 1129(a)(6) .....................................................19

I.    The Plan Satisfies the Best Interests of Creditors Test (Section 1129(a)(7)) ..........20

J.    Acceptance or Impairment (Section 1129(a)(8) ......................................20

K.    Payment of Administrative and Priority Claims (Section 1129(a)(9)) ....................21

1.    Treatment of Creditors Holding Administrative Claims ...........................21

2.    Treatment of Creditors Holding Allowed Priority Tax Claims ...................21

L.    The Plan is Anticipated to be Accepted by at Least one Impaired Class
(Section 1129(a)(10)).....................................................................23

M.    Feasibility (Section 1129(a)(11)) ...........................................................23

N.    The United States Trustee's Fees Will Be Paid (Section 1129(a)(12)) ...................25

O.    Retiree Benefits (Section 1129(a)(13)).....................................................25

P.    Domestic Support Obligations (Section 1129(a)(14) .............................................25

Q.    Distributions in Cases in Which the Debtor is an Individual
(Section 1129(a)(15)).....................................................................25

R.    Transfers in Accordance with Nonbankruptcy Law (Section 1129(a)(16)) ...........26

IV.    CONCLUSION...................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## OTHER AUTHORITIES

*Acequia, Inc. v. Clinton (In re Acequia, Inc.),*
  787 F.2d 1352 (9th Cir. 1986)........................................................................ 17, 23

*Brady v. Andrew (In re Commercial Western Fin. Corp.),*
  761 F.2d 1329 (9th Cir. 1985)................................................................................. 12

*Buffalo Sav. Bank v. Marston Enters., Inc. (In re Marston Enters., Inc.),*
  13 B.R. 514 (Bankr. E.D.N.Y. 1981)....................................................................... 23

*Corestates Bank, N.A.,*
  202 B.R. ................................................................................................................... 24

*Florida Partners Corp. v. Southeast Co. (In re Southeast Co.),*
  868 F.2d 335 (9th Cir. 1988)................................................................................... 15

*Hanson v. First Bank of South Dakota,*
  828 F.2d 1310 (8th Cir. 1987)................................................................................. 17

*In re Briscoe Enters. Ltd.,*
  944 F.2d ................................................................................................................... 24

*In re Briscoe Enters., Ltd.,*
  994 F.2d ................................................................................................................... 23

*In re Diversified Investors Fund XVII,*
  91 B.R. 559 (Bankr. C.D. Cal. 1988)...................................................................... 19

*In re Drexel Burnham Lambert Group Inc.,*
  138 B.R. 723 (Bankr. S.D.N.Y. 1992)..................................................................... 24

*In re Eddington Thread Mfg., Co.,*
  181 B.R. 826 (Bankr. E.D. Pa. 1995).................................................................. 23, 24

*In re Future Energy Corp.,*
  83 B.R. 470 (Bankr. S.D. Ohio 1988)..................................................................... 19

*In re Great Bay Hotel & Casino, Inc.,*
  251 B.R. 213 (Bankr. N.J. 2000) ............................................................................ 24

*In re Haardt,*
  65 B.R. 697 (Bankr. E.D. Pa. 1986)........................................................................ 13

*In re M. Long Arabians,*
  103 B.R. 211 (9th Cir. B.A.P. 1989)....................................................................... 19

*In re Mayer Pollack Steel Corp.,*
  174 B.R. 414 (Bankr. E.D. Pa. 1994)...................................................................... 24

*In re Prussia Assocs.,*
  322 B.R. 572 (Bankr. E.D. Pa. 2005).................................................................. 23, 24

*In re Roedemeier,*
  374 B.R. 264 (Bankr. D. Kan. 2007) ...................................................................... 26

*In re Ruti-Sweetwater, Inc.,*
  836 F.2d 1263 (10th Cir. 1988)............................................................................... 23

*In re Smith,*
  123 B.R. 863 (Bankr. C.D. Cal. 1991).................................................................... 14

*In re Texaco,*
  84 B.R. 893 (Bankr. S.D.N.Y. 1988)....................................................................... 12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re T-H New Orleans Ltd. P'ship*,
    116 F.3d 790 (5th Cir. 1997)...................................................................... 23, 24
*In re Toy & Sports Warehouse, Inc.*,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984)......................................................... 17, 23
*In re TS Indus., Inc.*,
    117 B.R. 682 (Bankr. D. Utah 1990) ............................................................. 16
*In re Victory Constr. Co., Inc.*,
    42 B.R. 145 (Bankr. C.D. Cal. 1984)............................................................. 20
*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2nd Cir. 1988)................................................................ 12, 23
*State Street Bank and Trust Co. v. Elmwood, Inc. (In re Elmwood, Inc.)*,
    182 B.R. 845 (D. Nev. 1995) ...................................................................... 12
*Steelcase v. Johnston (In re Johnston)*,
    21 F.3d 323 (9th Cir. 1994).......................................................................... 12
*Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*,
    84 B.R. 167 (9th Cir. B.A.P. 1988).............................................................. 18
*Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*,
    779 F.2d 1456 (10th Cir. 1985).................................................................... 20

**REGULATIONS**

11 U.S.C. § 1107 .............................................................................................. 10
11 U.S.C. § 1108 .............................................................................................. 10
11 U.S.C. § 1122 ........................................................................................ 12, 13
11 U.S.C. § 1122(a) .......................................................................................... 12
11 U.S.C. § 1123 .................................................................................. 12, 13, 17
11 U.S.C. § 1123(a) .......................................................................................... 13
11 U.S.C. § 1123(a)(1)...................................................................................... 13
11 U.S.C. § 1123(a)(2)...................................................................................... 14
11 U.S.C. § 1123(a)(3)...................................................................................... 14
11 U.S.C. § 1123(a)(4)................................................................................. 14, 15
11 U.S.C. § 1123(a)(5)...................................................................................... 15
11 U.S.C. § 1123(a)(6)...................................................................................... 15
11 U.S.C. § 1123(a)(7)...................................................................................... 15
11 U.S.C. § 1123(b) .................................................................................... 16, 17
11 U.S.C. § 1123(b)(1)...................................................................................... 16
11 U.S.C. § 1123(b)(2)................................................................................. 16, 17
11 U.S.C. § 1123(b)(3)(A)................................................................................ 17
11 U.S.C. § 1123(b)(5)...................................................................................... 17
11 U.S.C. § 1123(b)(6)...................................................................................... 17
11 U.S.C. § 1124 .............................................................................................. 14
11 U.S.C. § 1125(e) .......................................................................................... 17
11 U.S.C. § 1126(c) .......................................................................................... 20
11 U.S.C. § 1129 .......................................................................................... 9, 11
11 U.S.C. § 1129(a) ................................................................................. 9, 11, 26

1

**TABLE OF AUTHORITIES**
(continued)

2
                                                                                                    **Page(s)**

3    11 U.S.C. § 1129(a)(1) ................................................................................. 11, 12
     11 U.S.C. § 1129(a)(10) ..................................................................................... 23
4    11 U.S.C. § 1129(a)(11) ................................................................................ 23, 24
     11 U.S.C. § 1129(a)(12) ..................................................................................... 25
5    11 U.S.C. § 1129(a)(13) ..................................................................................... 25
     11 U.S.C. § 1129(a)(14) ................................................................................ 25, 26
6    11 U.S.C. § 1129(a)(15) ..................................................................................... 25
     11 U.S.C. § 1129(a)(15)(B) ................................................................................ 25
7    11 U.S.C. § 1129(a)(16) ..................................................................................... 26
     11 U.S.C. § 1129(a)(3) ....................................................................................... 17
8    11 U.S.C. § 1129(a)(4) ................................................................................. 18, 19
9    11 U.S.C. § 1129(a)(5) ....................................................................................... 19
     11 U.S.C. § 1129(a)(6) ....................................................................................... 19
10   11 U.S.C. § 1129(a)(7) ................................................................................. 19, 20
     11 U.S.C. § 1129(a)(8) ....................................................................................... 20
11   11 U.S.C. § 1129(a)(9) ........................................................................... 13, 21, 22
12   11 U.S.C. § 1129(a)(9)(C) ................................................................................. 22
     11 U.S.C. § 1129(a)(9)(C)(iii) ........................................................................... 21
13   11 U.S.C. § 1325(b)(2) ................................................................................ 25, 26
     11 U.S.C. § 1325(b)(3) ................................................................................ 25, 26
14   11 U.S.C. § 328 .................................................................................................. 19
15   11 U.S.C. § 329 .................................................................................................. 19
     11 U.S.C. § 330 .................................................................................................. 19
16   11 U.S.C. § 331 .................................................................................................. 19
17   11 U.S.C. § 365 .................................................................................................. 16
     11 U.S.C. § 503(b) ............................................................................................. 19
18   11 U.S.C. § 507(a) ............................................................................................. 13
     11 U.S.C. § 507(a)(1) ......................................................................................... 13
19   11 U.S.C. § 507(a)(2) ......................................................................................... 13
20   11 U.S.C. § 507(a)(8) ......................................................................................... 13
     28 U.S.C. § 1930 ............................................................................................... 25

21
                                             **9**
22
     Fed. R. Bankr. P. 6006(a) ................................................................................ 16
23   Fed. R. Bankr. P. 9014 ..................................................................................... 16

24
                                            **13**
25
     1978 U.S.C.C.A.N. 5787 .................................................................................. 12
26   COLLIER ON BANKRUPTCY, 1129.02[4] (15th ed. 1991) .................................... 19
     COLLIER ON BANKRUPTCY, 1129.03[15][a] (15th ed. rev. 2008) .................... 26
27   S. Rep. No. 95-55 .............................................................................................. 12

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      CCC Consulting Corporation, debtor and debtor-in-possession in the above-captioned

3  chapter 11, subchapter V case (the "Debtor"),[2] hereby submits the following Memorandum of

4  Points and Authorities (the "Memorandum") in support of confirmation of its *Second Amended*

5  *Plan of Reorganization For Small Business Under Chapter 11, Dated December 15, 2023* (the

6  "Plan" and/or simply, the "Plan"), as modified, whereby he seeks to reorganize its financial

7  affairs.  A copy of the Plan is attached as **Exhibit 1** to the Declaration of Ted Cutting ("Cutting

8  Decl.") annexed hereto.[3]

9      The Plan is a reorganizing plan which provides for the payment of Allowed Claims from

10  the Debtor's Cash and future income.  The Court will consider confirmation of the Plan on

11  February 15, 2024, at 10:00 a.m. (the "Confirmation Hearing").

12      Accompanying this Memorandum are the following documents filed in support of

13  confirmation of the Plan:

14      1.      *Declaration of Edmund Cutting in Support of Confirmation of Debtor's Second*

15  *Amended Plan of Reorganization for Small Business Under Chapter 11, Dated December 15,*

16  *2023* (the "Debtor Declaration");

17      2.      *Analysis of Ballots for Accepting or Rejecting Debtor's Second Amended Plan of*

18  *Reorganization For Small Business Under Chapter 11, Dated December 15, 2023; Declaration of*

19  *James E. Till*;

20      3.      *Declaration of Martha Araki Regarding Service of Plan Solicitation Materials*;

21  and

22      4.      A [proposed] *Confirmation Order*.

23      In support of confirmation of the Plan, the Debtor will also rely upon the other pleadings,

24  papers, and records on file with the Bankruptcy Court in Debtor's case and contested proceedings

25

---

26  [2] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Plan.

27  [3] The Debtor requests the Court dispense with the need to file a disclosure statement because the

28  Plan, on a stand-alone basis, provides adequate information to the creditors affected by the modified treatment, thereby rendering a separate disclosure statement unnecessary.

pending in Debtor's case, and such additional evidence and arguments as may be properly presented to the Court at or before the Confirmation Hearing.

Based on the foregoing, and for the reasons set forth herein, the Debtor respectfully requests that the Court confirm the Plan pursuant to Sections 1129(a) and 1191 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code" and/or "Code").[4]

# I.  INTRODUCTION

The Court should confirm the Plan pursuant to Sections 1129 and 1191 of the Bankruptcy Code.  The Plan is the result of extensive, good faith efforts by Debtor to formulate a plan of reorganization that provides for the payment of Allowed Claims from the Debtor's Cash and future income.  The Plan complies with every applicable section of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Rules"), and applicable non-bankruptcy laws relating to confirmation thereof.

The Plan is Debtor's best opportunity to successfully reorganize and to give holders of claims the best possible returns under the difficult circumstances of this Case.  Depending on the Claim, the Plan results in payment in full or in part, either by cramdown or in accordance with agreed terms, of Allowed Claims, including Allowed Priority Claims, Allowed Administrative Claims, Allowed Secured Claims and Allowed General Unsecured Claims.  To that end, the Plan has the affirmative support of at least one of the impaired classes—i.e., Class 6.  Debtor therefore requests the Bankruptcy Court confirm the Plan.

# II.  BACKGROUND

**A.      Debtor and Events Leading to the Commencement of the Bankruptcy Case.**

The Debtor is in the business of developing and operating fast casual restaurants in California and the West, with its principal business offices located in Paramount and West Covina in Los Angeles County.  Most recently, the debtor had two "Patxi's Pizza" restaurant locations, one in San Carlos, California, and the other in Denver, Colorado.  Unfortunately, the Denver location had to cease operations as the result of its continuing poor performance, originating from the

---

[4] Unless otherwise indicated, all section references herein are to the Bankruptcy Code, as codified in title 11 of the United States Code, 11 U.S.C. Sections 101, *et seq.*, including all amendments thereto.

Covid-19 shutdowns, and followed by related and continuing business and supply chain disruptions, as well as inflationary pressures.  Notwithstanding the foregoing issues, which continue to plague many small businesses nationwide, the San Carlos location has managed to remain open and profitable.  The Debtor believes it can successfully reorganize under subchapter V, thereby preserving approximately forty (40) jobs, and with the hope of expanding its presence again in the future.

**B.**     **The Bankruptcy Case.**

On December 16, 2022, the Debtor filed his voluntary chapter 11, subchapter V petition in the above-captioned case (the "<u>Bankruptcy Case</u>").  Throughout the pendency of the Bankruptcy Case, Debtor has continued to manage its affairs as a debtor and debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

**C.**     **Negotiations with the Judgment Creditors and the Plan.**

Throughout the pendency of Debtor's Bankruptcy Case, the Debtor has continued both formal and informal negotiations with its creditors in order to reach consensual resolutions of such claims.  For example, the Debtor had extensive negotiations with its landlord that ultimately resulted in the proposed Second Amendment to Retail Lease, for which the Debtor's Plan now seeks approval as further described in Article 10 of the Plan.  And with a continued effort to reach consensus with its constituencies, the Debtor is in discussions with the Subchapter V Trustee to resolve his objections to the Plan.  To that end, the Debtor anticipates one or more changes to the Plan and/or form of Confirmation Order in an effort to address the Subchapter V Trustee's issues. The Debtor believes the Plan represents Debtor's best opportunity to successfully reorganize and pay the highest possible recovery to the Estate's creditors.

**D.**     **Summary of the Structure of the Plan.**

The Plan has the following structure:

- The Plan is a reorganizing plan which provides that Allowed Claims against Debtor will be paid either in full or in part, including all Allowed Secured Claims, Allowed Priority Claims, and Allowed General Unsecured Claims.

- Creditors holding Secured Claims against Debtor are classified in Classes 2 through 5. Each of the Secured Creditors (Classes 2 through 5) shall have their debt obligations modified with respect to repayment terms and interest rates as provided in the Plan, and are entitled to vote on the Plan.

- Creditors holding General Unsecured Claims against Debtor are classified in Class 6. General Unsecured Creditors shall have their debt obligations modified with respect to repayment terms and interest rates as provided in the Plan, and are entitled to vote on the Plan.

- The sources of payments to Creditors under the Plan include Cash and future income.

- The sole equity interest holder shall retain his ownership interest in the Debtor, subject to the obligations and liens created by or preserved under the Plan.

- **The Debtor shall avoid or strip the liens of the Secured Creditors in Class 3 (ODK Capital, LLC), Class 4 (Pinnacle Business Funding LLC), and Class 5 (Kalamata Capital LLC), whether accomplished by confirmation of this Plan, or by motion or adversary proceeding, and the indisputable evidence will demonstrate that the value of any collateral is such that each of the Secured Creditors in Classes 3, 4, and 5 are intractably underwater. As such, the Debtor believes the Court will find sufficient evidence to avoid or strip the liens of each of the Secured Claims in Classes 3, 4, and 5.**

## III.  THE PLAN COMPLIES WITH ALL APPLICABLE PROVISIONS OF SECTION 1191(b) OF THE BANKRUPTCY CODE

Pursuant to 11 U.S.C. §1191(b), the Court shall confirm a subchapter V plan if all the applicable requirements of section 1129(a) are met, other than paragraphs (8), (10), and (15) of that section, if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan.

The Debtor's Plan complies with all of the requirements of §1129(a) except (8) and (15).  As to section 1129(a)(10), the Debtor received a single Class 6 ballot from Kalamata Capital LLC in favor of Plan confirmation.  The Debtor carries Class 6 with a single ballot favoring confirmation.

**A.      The Plan Complies With the Applicable Provisions of Title 11 (Section 1129(a)(1)).**

Section 1129(a)(1) provides that a Court may confirm a plan only if all requirements of Section 1129 are met, including that "[t]he plan complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(1).  Although the scope of Section 1129(a)(1) is broad on its face, the legislative history of Section 1129(a)(1) suggests that this subsection relates primarily to those provisions of the Bankruptcy Code concerning the form and content of a plan of reorganization such as Sections 1122 and 1123 which govern classification of claims and interests and the contents of a plan.  *See* S. Rep. No. 95-55, 95th Cong., 2d Sess. 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2nd Cir. 1988); *In re Texaco*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to classification of claims and the contents of a plan of reorganization.").  As discussed below, the Plan satisfies the requirements of both Section 1122 and Section 1123.

**B.      The Plan Complies With the Classification Requirements of Section 1122.**

A court has broad discretion to approve classification schemes in a plan of reorganization. *See Steelcase v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994); *State Street Bank and Trust Co. v. Elmwood, Inc. (In re Elmwood, Inc.)*, 182 B.R. 845, 849 (D. Nev. 1995).  Indeed, the Bankruptcy Code's only restriction on the creation of classes is Section 1122(a), which provides that a plan may place a claim or interest in a particular class only if the claim or interest is "substantially similar" to other claims or interests in the class.  For the following reasons, the Plan's classification of claims and interests complies with Section 1122.

1.      Secured Claims.

With respect to classes of secured claims, as a matter of law, it has long been recognized that secured claimants with different lien rights must be separately classified because their legal

rights against a debtor and his property are fundamentally different.  *See Commercial Western,*

*supra*, 761 F.2d at 1338.  Here, the Plan has separately classified each Secured Claim as follows:

- Class 1:  Priority Claims under § 507(a).

- Class 2:  Secured Claim of Small Business Administration.

- Class 3:  Secured Claim of ODK Capital, LLC (formerly Celtic Bank).

- Class 4:  Secured Claim of Pinnacle Business Funding LLC.

- Class 5:  Secured Claim of Kalamata Capital LLC.

- Class 6:  General Unsecured Claims.

Thus, the Plan's classification for Secured Claims, with separate classes for each Secured

Claim, complies with Section 1122.

2.    Priority Unsecured Claims.

The classification of Class 1 Claims (Priority Claims under § 507(a), other than

Administrative Claims and Priority Tax Claims), separate from general unsecured claims, is

justified because their legal rights against Debtor and Debtor's property have statutory priority

over general unsecured claims.  *See* 11 U.S.C. §§ 507(a), 1129(a)(9).  The Plan places these

Priority Claims in Class 1.

3.    General Unsecured Claims.

The Plan contains one class of general unsecured creditors—Class 6.

The Plan's classification for General Unsecured Claims complies with Section 1122 of

the Bankruptcy Code.

4.    Interests.

The Plan separately classifies interest holders in the Reorganized Debtor in Class 7.

**C.    The Plan Includes All Provisions Mandated by Code Section 1123(a).**

Section 1123 sets forth the mandatory and permissive contents of a plan.  As demonstrated

below, the Plan contains each of the provisions mandated by Code Section 1123(a).[5]

1.    Designation of Classes of Claims and Interests (Section 1123(a)(1)).

Section 1123(a)(1) requires that a plan designate classes of claims other than claims of a

---

[5] With the exception of section 1123(a)(8), which is inapplicable to this subchapter V case pursuant to section 1181.

kind specified in Section 507(a)(1) (administrative expense claims), Section 507(a)(2) (claims arising during a "gap" period in an involuntary case), or Section 507(a)(8) (tax claims). *See, e.g., In re Haardt*, 65 B.R. 697, 700 (Bankr. E.D. Pa. 1986).  Article 2 of the Plan designates Classes of Claims and Interests in accordance with Code Section 1123(a)(1).  The Plan does not classify claims of the type described in Sections 507(a)(1), 507(a)(2) and 507(a)(8).  Thus, the Plan satisfies Section 1123(a)(1).

2.    Specification of Unimpaired Classes (Section 1123(a)(2)).

Section 1123(a)(2) requires that a plan specify any class of claims or interests that is not impaired under the plan.  *See In re Smith*, 123 B.R. 863, 865 (Bankr. C.D. Cal. 1991).  Under Section 1124, a class of claims is impaired unless each claim in that class is treated in either of the following ways: (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim is entitled; or (2) the plan cures any default, reinstates the maturity, compensates the holder for damages, and does not otherwise alter the legal, equitable, or contractual rights to which such claim entitles the holder.  *See* 11 U.S.C. § 1124.  Article 4 of the Plan specifies that Classes 2 through 6 are impaired, and Class 7 is not impaired under the Plan.  Thus, the Plan satisfies Section 1123(a)(2).

3.    Specification of Treatment of Impaired Classes (Section 1123(a)(3)).

Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interest that is impaired under the plan."  The following classes are designated as impaired in Article 4 of the Plan:

- Class 1:  Priority Claims under § 507(a).

- Class 2:  Secured Claim of Small Business Administration.

- Class 3:  Secured Claim of ODK Capital, LLC.

- Class 4:  Secured Claim of Pinnacle Business Funding LLC.

- Class 5:  Secured Claim of Kalamata Capital LLC.

- Class 6:  General Unsecured Claims.

Article 4 of the Plan specifies the treatment of each impaired class of claims.  Thus, the requirements of Section 1123(a)(3) are satisfied.

4.      Provide Same Treatment for Each Claim or Interest Within a Class (Section 1123(a)(4)).

Section 1123(a)(4) requires a plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Article 4 of the Plan provides for the same treatment for each of the Allowed Claims contained in each of the classes in compliance with Code Section 1123(a)(4).

5.      Adequate Means for Implementation of the Plan (Section 1123(a)(5)).

Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and provides several non-exclusive means for such implementation. *See Florida Partners Corp. v. Southeast Co. (In re Southeast Co.)*, 868 F.2d 335 (9th Cir. 1988). Article 7 of the Plan contains the following means of implementation:

- The reorganization of Debtor's financial affairs and the orderly disposition of Debtor's assets to fund distributions to creditors.

- The Plan provides for Reorganized Debtor to act as the disbursing agent.

- On the Effective Date, title to all assets, claims, causes of action, properties, and business operations of Debtor and of the Estate shall revest in Reorganized Debtor, and thereafter, the Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in the Plan.

- From and after the Effective Date, except as otherwise described in the Plan, the Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of the Court.

- From and after the Effective Date, the Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed under Article 6 of the Plan.

6.      Charter of Reorganized Debtor (Section 1123(a)(6)).

Section 1123(a)(6) does not apply because Debtor is wholly owned by a single shareholder.

7.     Selection of Officers and Directors (Section 1123(a)(7)).

Section 1123(a)(7) is satisfied as the sole equity interest holder shall retain his ownership interest in the Debtor, subject to the obligations and liens created by or preserved under the Plan, and shall continue to serve as the sole officer and director of the Reorganized Debtor.

**D.    The Plan Contains Provisions Permitted by Code Section 1123(b).**

Code Section 1123(b) describes certain permissive plan provisions. The Plan contains a number of these provisions.

1.     Impairment/Nonimpairment (Section 1123(b)(1)).

Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." As discussed more fully above, the Plan impairs Class 1 (Priority Claims under § 507(a)), Class 2 (Secured Claim of Small Business Administration), Class 3 (Secured Claim of ODK Capital, LLC), Class 4 (Secured Claim of Pinnacle Business Funding LLC), Class 5 (Secured Claim of Kalamata Capital LLC), and Class 6 (General Unsecured Claims). *See* Article 4 of the Plan.

2.     Assumption/Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2)).

Subject to Code Section 365, Section 1123(b)(2) permits a plan to provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected. *See* 11 U.S.C. § 1123(b)(2); *see also In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990). Rule 6006(a) provides that the assumption or rejection of an executory contract or unexpired lease as a part of a plan is not governed by Rule 9014. Thus, no separate motion, notice, or hearing is required.

Article 6 of the Plan provides for the assumption of certain of Debtor's executory contracts and unexpired leases. Article 6 provides that, except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of the Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. Any executory contracts and unexpired leases

assumed by Debtor shall vest in Reorganized Debtor as of the Effective Date.  There have been

no objections to the proposed assumption of the unexpired leases and executory contracts.  Based

on the foregoing, the Plan meets the requirements of Section 1123(b)(2).

       3.      <u>Settlement and Compromise (Section 1123(b)(3)(A))</u>.

       Section 1123(b)(3)(A) provides that a plan may include the settlement or compromise of

any claim belonging to a debtor or the estate.  Article 7 of the Plan provides that the Debtor

proposes to implement and consummate the Plan through the means contemplated pursuant to,

among other things, section 1123(b)(3)(A) of the Bankruptcy Code, and pursuant to all otherwise

applicable laws, orders and regulations.  The provisions of the Plan set forth in Article 7 are

consistent with Section 1123(b)(3)(A) and should be approved.

       4.      <u>Modification of Rights of Holders of Claims (Section 1123(b)(5))</u>.

       Section 1123(b)(5) provides that "a plan may modify the rights of holders of secured

claims . . . or of holders of unsecured claims, or leave unaffected the rights of holders of any class

of claims."  11 U.S.C. § 1123(b)(5).  Article 4 of the Plan provides that the rights of holders of

claims in Classes 1, 2, 3, 4, 5, and 6 are modified.  Based on the foregoing, the Plan meets the

requirements of Section 1123(b)(5).

       5.      <u>Other Appropriate Provisions (Section 1123(b)(6))</u>.

       Code Section 1123(b)(6) specifies that a plan may "include any other appropriate

provision not inconsistent with the applicable provisions" of Title 11.  11 U.S.C. § 1123(b)(6).

Most of the provisions of the Plan fit within the mandatory and permissive categories of plan

provisions identified in Code Section 1123 (as discussed above).  To the extent that the provisions

of the Plan do not fit within these categories, as set forth in greater detail below, Debtor believes

that they remain consistent with Section 1123(b) and all other applicable provisions of the Code.

**E.**      **The Plan is Proposed in Good Faith (Section 1129(a)(3)).**

       Section 1129(a)(3) requires that a plan must be proposed "in good faith and not by any

means forbidden by law."  *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1360

(9th Cir. 1986).  Although the term "good faith" is left undefined by the Bankruptcy Code, "[i]n

the context of a chapter 11 reorganization . . . a plan is considered proposed in good faith 'if there

1    is a reasonable likelihood that the plan will achieve a result consistent with the standards

2    prescribed under the Code.'" *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1315 (8th

3    Cir. 1987) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y.

4    1984))(overruled on other grounds); *accord Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84

5    B.R. 167, 172 (9th Cir. B.A.P. 1988) ("Good faith requires that a plan will achieve a result

6    consistent with the objectives and purposes of the Code.").

7        As demonstrated below, the Plan clearly satisfies the "good faith" requirement of Section

8    1129(a)(3).  There is ample evidence to support a finding of good faith.  The Plan is the result of

9    extensive good faith efforts by the Debtor to formulate a plan of reorganization which provides

10    for the timely payment, to the extent the Debtor's resources permit, of Allowed Claims.  Support

11    for the Plan by at least one impaired consenting class of creditors—i.e., Class 6—is further

12    evidence in support of a good faith finding.[6]  Further, the Plan complies with every required

13    section of the Code, the Rules and applicable non-bankruptcy laws relating to plan confirmation.

14    Simply, the Plan is Debtor's best effort to successfully reorganize and to give all holders of

15    Allowed Claims the best possible returns under the circumstances.  This is "a result consistent

16    with the objectives and purposes of the Code".  *In re Stolrow's, Inc., supra*, 84 B.R. at (9th Cir.

17    B.A.P. 1988).

18        Thus, the Plan meets the requirement of having been proposed in good faith.

19    **F.    The Plan Provides for Court Approval of Fees and Costs Paid by the Estate (Section**

20        **1129(a)(4)).**

21        Section 1129(a)(4) provides that the court shall confirm a plan only if:

22            [a]ny payment made or to be made by the proponent, by Debtor, or by a
            person issuing securities or acquiring property under the plan, for services
23            or for costs and expenses in or in connection with the case, or in
            connection with the plan and incident to the case, has been approved by,
24            or is subject to the approval of, the court as reasonable.

25    11 U.S.C. § 1129(a)(4).

26    _____

27    [6] Notwithstanding Section 1191's excepting of the need for at least one impaired consenting class
    of creditors to confirm a plan under subchapter V provided the Plan does not discriminate
28    unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired
    under, and has not accepted, the Plan.

Section 1129(a)(4) is directed primarily at policing the award and payment of professional fees from the estates in chapter 11 cases. *See* 5 COLLIER ON BANKRUPTCY ¶ 1129.02[4] at 1129-31 (15th ed. 1991) ("section 1129(a)(4) protects the integrity of the reorganization process by assuring creditors that payments from Debtor's estate will be subject to court review.").

The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid to Professionals from the Estate satisfy the objectives of Section 1129(a)(4). *See In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions, e.g., §§ 328, 329, 330, 331, and 503(b) and need not be explicitly provided for in a Chapter 11 plan."). Thus, payments of the type specified in Code Section 1129(a)(4) will only be made after this Court allows the expenses as reasonable.

## G.    The Plan Complies with Section 1129(a)(5) Regarding the Identity of Officers, Directors, and Insiders.

Section 1129(a)(5) mandates that a plan proponent disclose the identity and affiliations of any known individual proposed to serve after confirmation of the plan as an officer, director, or voting trustee and further requires the disclosure of any insider to be employed or retained by the debtor and the nature of compensation to be paid to such insider. With respect to any officer, director or voting trustee, the appointment or continuance in office of an individual must be consistent with the interests of creditors and equity security holders and with public policy.

In this case, the Reorganized Debtor will serve as disbursing agent for purposes of making transfers and payments under the Plan. Based on the foregoing, the requirements of Section 1129(a)(5) are satisfied.

## H.    The Plan Does Not Require Approval of Any Regulatory Commission (Section 1129(a)(6)).

Although Debtor is a corporation, Debtor is not subject to rate regulation by any governmental regulatory commission. Therefore, Section 1129(a)(6) does not apply.

**I.**    **The Plan Satisfies the Best Interests of Creditors Test (Section 1129(a)(7)).**

Section 1129(a)(7) requires that a plan proponent demonstrate that the plan meet the "best interest of creditors" test.  *See In re M. Long Arabians*, 103 B.R. 211, 216 (9th Cir. B.A.P. 1989); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561-62 (Bankr. C.D. Cal. 1988).  Under this test, each holder of a claim or interest in an impaired class must either accept the plan or receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if Debtor were liquidated under a hypothetical chapter 7 case.  *See* 11 U.S.C. § 1129(a)(7); *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1460 (10th Cir. 1985); *In re Victory Constr. Co., Inc.*, 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984).

The Plan provides each creditor with the same or better treatment than if Debtor was liquidated under chapter 7.  As illustrated in detail in Exhibit 1 to the Plan, there is not a single class of creditors that would receive or retain more than if the Debtor were liquidated in a hypothetical chapter 7 case.  Moreover, in the absence of the Plan, all of Debtor's assets would be liquidated or abandoned by a chapter 7 trustee.  After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Creditors, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee and (ii) the likely erosion in value of assets in a chapter 7 case in the context of an expeditious liquidation and the "forced sale" atmosphere that would prevail under chapter 7, Debtor has determined that confirmation of the Plan will provide each holder of an Allowed Claim with a recovery that is not less than such holder would receive pursuant to an immediate liquidation of Debtor's assets under chapter 7.

**J.**    **Acceptance or Impairment (Section 1129(a)(8)).**

Section 1129(a)(8) requires that each class of claims has either accepted the Plan or is not impaired.  A class of Claims accepts the Plan if holders of at least two-thirds in dollar amount and a majority in number of claims of that class vote to accept the Plan, counting only those claims whose holders actually vote on the Plan.  *See* 11 U.S.C. § 1126(c).

As discussed above, Classes 1, 2, 3, 4, 5, and 6 are impaired under the Plan.  Class 6 has voted to accept the Plan.  Notwithstanding, because the Debtor is a subchapter V debtor, it is not required to satisfy Section 1129(a)(8) pursuant to Section 1191(b), provided the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.  Debtor's Plan satisfies the elements of Section 1191(b).

**K.**      **Payment of Administrative and Priority Claims (Section 1129(a)(9)).**

Section 1129(a)(9) contains provisions generally requiring payment in cash of administrative and non-tax priority claims and permitting the deferred payment of priority tax claims over a period not exceeding five years from the Petition Date.  Article 3 of the Plan provides for the payment in full in Cash of Allowed Administrative Claims, unless the holder agrees to other treatment of the Claim.  Except as otherwise agreed to by the applicable administrative claimant, payment of each Allowed Administrative Claim shall occur on the later of the Plan's Effective Date, or the date on which the Administrative Claim is allowed.

1.      _Treatment of Creditors Holding Administrative Claims._

As set forth in the Plan, the Allowed Administrative Claims of Professionals shall be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.[7]

2.      _Treatment of Creditors Holding Allowed Priority Tax Claims._

Code Section 1129(a)(9)(C)(iii) provides that, unless agreed otherwise, priority tax claims must be paid "in a manner not less favorable than the most favored non-priority unsecured claim provided for by the plan":

> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> ***
>
> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--

---

[7] Or paid as otherwise allowed under subchapter V of Title 11.

***

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b));

11 U.S.C. § 1129(a)(9)(C).

Under Article 3 of the Plan, to the extent that any amounts are determined to be owed as Priority Tax Claims, each holder of an Allowed Priority Tax Claim against Debtor shall receive, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim, at the election of Debtor, either: (i) Cash payment in the amount of the holder's Allowed Priority Tax Claim on the Effective Date; (ii) in accordance with Code Section 1129(a)(9)(C), regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed Amount of such Priority Tax Claim to be paid over a period ending not later than five (5) years from the Petition Date; or (iii) such other terms as may be agreed upon by such holder and Debtor.  The rate of interest to be paid on Priority Tax Claims that are paid over time as provided above shall be equal to the underpayment rate specified 26 U.S.C. Section 6621 (determined without regard to 26 U.S.C. Section 6621(c)) as of the Effective Date or such higher rate as required by Bankruptcy Code Section 511(a).

Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of post-Petition Date interest on, or penalties with respect to or arising in connection with, such Priority Tax Claims, except as allowed by the Court, and all Claims or demands by holders of Priority Tax Claims for post-Petition Date interest or penalties thereon, except as may be allowed by the Court, shall be disallowed by the Plan and the Confirmation Order, and the

holders of Priority Tax Claims shall not assess or attempt to collect interest or penalties from the Estate or its properties.

Thus, the Plan satisfies all of the requirements of Section 1129(a)(9).

**L.      The Plan is Anticipated to be Accepted by at Least one Impaired Class (Section 1129(a)(10)).**

Code Section 1129(a)(10) requires that at least one class of impaired claims has accepted the Plan, determined without including any acceptance by an insider holding a claim in such a class. *See In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1267 (10th Cir. 1988); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 151; *Buffalo Sav. Bank v. Marston Enters., Inc. (In re Marston Enters., Inc.)*, 13 B.R. 514, 518-19 (Bankr. E.D.N.Y. 1981).

In this case, and despite the modification of their rights, Class 6 voted to accept the Plan, which would satisfy the requirement of Section 1129(a)(10). Notwithstanding the Debtor's satisfaction of this element, because the Debtor is a subchapter V debtor, it is not required to satisfy Section 1129(a)(10) pursuant to Section 1191(b).

**M.      Feasibility (Section 1129(a)(11)).**

Section 1129(a)(11) requires the Court to find confirmation is unlikely to be followed by the liquidation or the need for further financial reorganization of the debtor, unless such liquidation or reorganization is provided for in the plan. This "feasibility requirement" is satisfied by showing a "reasonable probability of success." *In re Acequia, Inc., supra*, 787 F.2d at 1364.

In interpreting Section 1129(a)(11), courts have found the language of the statute to be "sufficiently broad so as to have provided a great deal of latitude to Courts interpreting its provisions." *In re Eddington Thread Mfg., Co.*, 181 B.R. 826, 832-33 (Bankr. E.D. Pa. 1995). The courts have also universally interpreted the statute to mean that a debtor need only demonstrate a reasonable assurance of commercial viability, and the court need not require a guarantee of success in order to find that a plan satisfies the feasibility requirement. *See, e.g., In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997); *In re Briscoe Enters., Ltd.*, 994 F.2d 1160, 1165-66 (5th Cir. 1993); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649-50 (2nd Cir. 1988); *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005).

1      While Debtor bears the burden of proving feasibility, the applicable standard is by a

2  preponderance of the evidence – proof that a given fact is "more likely than not." *In re Briscoe*

3  *Enters., Ltd., supra*, 994 F.2d at 1164; *see also In re T-H New Orleans Ltd., P'ship, supra*, 116

4  F.3d at 802; *Corestates Bank, N.A. v. United Chem. Tech., Inc.*, 202 B.R. 33, 45 (E.D. Penn.

5  1996). Further, a number of courts have held that this constitutes "a relatively low threshold of

6  proof." *In re Eddington Thread Mfg. Co., supra*, 181 B.R. at 833; *In re Mayer Pollack Steel*

7  *Corp.*, 174 B.R. 414, 423 (Bankr. E.D. Pa. 1994) (stating that debtors "have established that they

8  meet the requisite low threshold of support for the Plan as a viable undertaking …"); *see also In*

9  *re Briscoe Enters. Ltd., supra*, 944 F.2d at 1116 (upholding the bankruptcy court's ruling that a

10  reorganization that had only "'a marginal prospect of success'" was feasible because only "a

11  reasonable assurance of commercial viability" was required). "Just as speculative prospects of

12  success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The

13  mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a

14  guarantee of the future is not required." *In re Drexel Burnham Lambert Group Inc.*, 138 B.R.

15  723, 762 (Bankr. S.D.N.Y. 1992).

16      The courts have fashioned a series of factors to be considered in the determination of

17  whether a plan is feasible. These factors, while varying from case to case, traditionally include:

18  the adequacy of the debtor's capital structure, the earning power of its business, economic

19  conditions, the ability of the debtor's management, the probability of the continuation of the same

20  management, and other related matters affecting successful performance under the provisions of

21  the plan. *See, e.g., In re Prussia Assocs. supra*, 322 B.R. at 584; *In re Greate Bay Hotel &*

22  *Casino, Inc.*, 251 B.R. 213, 226-27 (Bankr. N.J. 2000); *see also In re T-H New Orleans Ltd.,*

23  *P'ship, supra*, 116 F.3d at 801 (discussing the factors that the bankruptcy court examined in its

24  decision that the debtor's plan was feasible).

25      The Plan in the present case meets the feasibility test. Debtor's interest in Cash and future

26  income from its operations will be the major sources of funding under the Plan. These will be

27  used for the payment of creditor claims.

28

1       Accordingly, Debtor has established that confirmation of the Plan is not likely to be

2 followed by liquidation or the need for further reorganization, and the Plan meets the standards of

3 Section 1129(a)(11).

4 **N.**     **The United States Trustee's Fees Will be Paid (Section 1129(a)(12)).**

5       Section 1129(a)(12) requires that all fees payable pursuant to 28 U.S.C. Section 1930

6 (consisting primarily of the quarterly fees to the United States Trustee) have been paid or that the

7 Plan provides for the payment of all such fees on or before the Effective Date of the Plan.

8 Article 3 of the Plan so provides, and therefore, satisfies Section 1129(a)(12).[8]

9 **O.**     **Retiree Benefits (Section 1129(a)(13)).**

10       Section 1129(a)(13) does not apply because the Debtor does not provide retiree benefits to

11 its employees.

12 **P.**     **Domestic Support Obligations (Section 1129(a)(14)).**

13       Debtor is a corporation and has no domestic support obligations; Section 1129(a)(14)

14 therefore does not apply.[9]

15 **Q.**     **Distributions in Cases in which Debtor is an Individual (Section 1129(a)(15)).**

16       Section 1129(a)(15) provides:

17       (15) In a case in which Debtor is an individual and in which the holder of an
      allowed unsecured claim objects to the confirmation of the plan—

18

19         (A) the value, as of the effective date of the plan, of the property to be
        distributed under the plan on account of such claim is not less than the
        amount of such claim; or

20

21         (B) the value of the property to be distributed under the plan is not less
        than the projected disposable income of Debtor (as defined in section

22         1325(b)(2)) to be received during the 5-year period beginning on the
        date that the first payment is due under the plan, or during the period

23         for which the plan provides payments, whichever is longer.

24       11 U.S.C. § 1129(a)(15).

25

26

27 ─────────────────────

28 [8] Quarterly fees paid to the United States Trustee are not applicable in a case under subchapter V
of the Bankruptcy Code.
[9] Debtor Declaration at ¶ 11.

1  For purposes of determining "disposable income," Section 1129(a)(15)(B) of the

2  Bankruptcy Code adopts the chapter 13 definition of disposable income found in

3  Section 1325(b)(2), which provides that the term "disposable income" means current monthly

4  income received by Debtor less amounts reasonably necessary to be expended.[10]

5  Here, the Debtor is a corporation, and therefore, Section 1129(a)(15) does not apply.

6  **R.    Transfers in Accordance with Nonbankruptcy Law (Section 1129(a)(16)).**

7  Section 1129(a)(16) of the Bankruptcy Code applies only to cases of nonprofit entities.

8  Debtor is a "for profit" corporation, so this provision does not apply.

9  ### IV.  CONCLUSION

10  The Plan satisfies each of the requirements for confirmation set forth in Title 11.

11  Therefore, Debtor respectfully requests the Court enter an order confirming the Plan.  Finally,

12  Debtor requests such other and additional relief as the Court deems just and proper.

13  Dated:  January 30, 2024                    TILL LAW GROUP

14

15                                              By:   /s/ James E. Till
16                                                  James E. Till

17                                              Attorneys for Debtor and Debtor-in-Possession
                                                CCC Consulting Corporation

18

19

20

21  [10] "Disposable income" in a Chapter 13 case is calculated using the "means test" set forth in
    Section 1325(b)(3).  However, Section 1129(a)(15)(B) does not adopt Section 1325(b)(3)'s
22  incorporation of the "means test" for above-median income debtors, and, as a result, the means
    test does not apply in Chapter 11.  *See In re Roedemeier*, 374 B.R. 264, 271-73 (Bankr. D. Kan.
23  2007) (finding that the "projected disposable income" of a chapter 11 debtor is determined solely
24  with reference to the expenses found in Section 1325(b)(2), rather than with reference to the
    "means test" expenses incorporated by Section 1325(b)(3) (disagreed with on other grounds by
25  the Tenth Circuit)); Advisory Committee Notes to Official Form 22B (Chapter 11 Statement of
    Current Monthly Income) ("The Chapter 11 form is the simplest of the three [22A, 22B, and
26  22C], since the means-test deductions of § 707(b)(2) are not employed in determining the extent
    of an individual Chapter 11 debtor's disposable income.") (emphasis added); COLLIER ON
27  BANKRUPTCY, 1129.03[15][a] (15th ed. rev. 2008) ("individual creditor insistence on the artificial
    expenses standards found in chapter 7 are neither necessary nor appropriate in chapter 11
28  cases.").