TILL LAW GROUP
James E. Till (State Bar No. 200464)
120 Newport Center Drive
Newport Beach, CA 92660
Telephone:  (949) 524-4999
Email:  james.till@till-lawgroup.com

Attorneys for CCC Consulting Corporation,
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:22-bk-16853-WB |
| CCC CONSULTING CORPORATION, | Chapter 11 |
| Debtor and Debtor-in-Possession. | Subchapter V |

**DECLARATION OF MARTHA ARAKI REGARDING SERVICE OF PLAN SOLICITATION MATERIALS**

Hearing:
Date:        February 15, 2024
Time:        10:00 a.m.
Courtroom:  1375
             United States Bankruptcy Court
             255 E. Temple Street
             Los Angeles, CA 90012

## DECLARATION OF MARTHA ARAKI

I, Martha Araki, declare as follows:

1.      I am a paralegal at Till Law Group (the "Firm"), which maintains an office at 120 Newport Center Drive, Newport Beach, CA 92660; telephone number (949) 524-4999.

2.      I am over the age of eighteen years old.  The facts herein are true and correct to the best of my knowledge and belief.

3.      At the direction of James E. Till, the partner at the Firm responsible for the chapter 11 subchapter V case of CCC Consulting Corporation, debtor and debtor-in-possession herein (the "Debtor"), I caused to be served on all creditors and other parties in interest, as applicable, the following plan solicitation materials ("Solicitation Materials") on December 15, 2023:

a)      A copy of the *Second Amended Plan of Reorganization for Small Business Under Chapter 11 Dated December 15, 2023* (the "Plan"), a copy of which is attached hereto as **Exhibit 1**;

b)      A copy of the *Notice of: (1) Plan Confirmation Hearing; and (2) Dates and Deadlines Related to Plan Confirmation Hearing* (the "Notice"), in the form attached hereto as **Exhibit 2**; and

c)      A *Ballot For Accepting or Rejecting Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11, Dated December 15, 2023* (the "Ballot"), for those creditors and other parties in interest entitled to vote on the Plan.  A copy of the respective Ballots for Plan Classes 1, 2, 3, 4, 5 and 6  are attached hereto as **Exhibit 3**.

4.      Each of the creditors and other parties in interest were served by placing true and correct copies of the Solicitation Materials in sealed envelopes in the United States mail, first class, postage prepaid, at the addresses set forth on **Exhibit 4** attached hereto.  Exhibit 4 also includes a description of the contents of each of the packages mailed to the parties.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 30th day of January 2024, at Castaic, California.


  */s/ Martha E. Araki*
Martha E. Araki

# EXHIBIT 1

# Plan

**Fill in this information to identify the case:**

Debtor Name <u>In re CCC CONSULTING CORPORATION</u>

United States Bankruptcy Court for the: <u>CENTRAL</u> District of <u>CALIFORNIA</u>
                                                                    (State)

Case number:  2:22-bk-16853-WB

☒  Check if this is an amended filing

Official Form 425A

# Second Amended Plan of Reorganization for Small Business Under Chapter 11  02/20

**Debtor <u>CCC Consulting Corporation's</u> Second Amended Plan of Reorganization dated <u>December 15, 2023 (the "Plan")</u>**

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

CCC Consulting Corporation, a California corporation, debtor and debtor-in-possession (the "<u>Debtor</u>") in the above-indicated chapter 11, subchapter V case (the "<u>Case</u>") is in the business of developing and operating fast casual restaurants in California and the West, with its principal business offices located in Paramount and West Covina in Los Angeles County.  Most recently, the Debtor had two "Patxi's Pizza" restaurant locations, one in San Carlos, California, and the other in Denver, Colorado.  Unfortunately, the Denver location had to cease operations and close its doors several months prior to filing for bankruptcy relief as the result of its continuing poor performance, originating from the Covid-19 shutdowns, and followed by related and continuing business and supply chain disruptions, as well as inflationary pressures.  Notwithstanding the foregoing issues, which continue to plague many small businesses nationwide, the San Carlos location managed to remain open and profitable.  The Debtor believes it can successfully reorganize under subchapter V, thereby preserving approximately forty (40) jobs, and with the hope of expanding its presence again in the future.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit  1  .**

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit 2** , which includes numerical projections, assumptions, and other relevant and material explanations.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of approximately $175,987.14

The final Plan payment is expected to be paid on the date that is five (5) years from the Effective Date.

The proposed Plan has the following risks:

The estimate of the distributions which will be made to the holders of Allowed Claims represents a projection of future events based upon certain assumptions made by the Debtor. The financial projections attached as Exhibit "2" present, to the best of management's knowledge and belief as well as the Debtor's income and expenses over the five (5) year life of the Plan. Although these future events may or may not occur, and the Debtor's estimate of the distributions which will be made to the holders of Allowed Claims may not be relied upon as a guarantee or other assurance of the actual distributions which will be made to creditors.

Absent confirmation of the Plan, Debtor would not be able to successfully reorganize, which would result in harm to Debtor's creditors, the employment by Debtor's entire workforce, and other adverse consequences.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of CCC Consulting Corporation (the *Debtor*) from its cash, and future income.

This Plan provides for:

|  |  |
|---|---|
| 2 | classes of priority claims; |
| 4 | classes of secured creditors; |
| 1 | class of non-priority unsecured claims; and |
| 1 | the interests of equity holders in the debtor in property of the estate. |

Non-priority unsecured creditors holding Allowed Claims will receive distributions, which the proponent of this Plan has valued at approximately ten (10) cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1**............................... | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| 2.02 | **Class 2**............................... | The secured claim of the Small Business Administration. |
| 2.03 | **Class 3**............................... | The claim of ODK Capital, LLC (formerly Celtic Bank), to the extent allowed as a secured claim under § 506 of the Code. |
| 2.04 | **Class 4**............................... | The claim of Pinnacle Business Funding LLC, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.05 | **Class 5**............................... | The claim of Kalamata Capital LLC, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.06 | **Class 6**............................... | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.07 | **Class 7**............................... | The interests of equity holders.  Debtor is a California corporation and Edmund Cutting holds 100% of the Debtor's stock. |

Debtor Name    CCC CONSULTING CORPORATION                                    Case number 2:22-bk-16853-WB

---

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
|---|---|---|
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | Each holder of an Allowed Priority Tax Claim against Debtor shall receive, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim, at the election of Debtor, either: (i) Cash payment in the amount of the holder's Allowed Priority Tax Claim on the Effective Date; (ii) in accordance with Code Section 1129(a)(9)(C), regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed Amount of such Priority Tax Claim to be paid over a period ending not later than five (5) years from the Petition Date; or (iii) such other terms as may be agreed upon by such holder and Debtor.  The rate of interest to be paid on Priority Tax Claims that are paid over time as provided above shall be equal to the underpayment rate specified 26 U.S.C. Section 6621 (determined without regard to 26 U.S.C. Section 6621(c)) as of the Effective Date or such higher rate as required by Bankruptcy Code Section 511(a).<br><br>Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of post-Petition Date interest on, or penalties with respect to or arising in connection with, such Priority Tax Claims, except as allowed by the Court, and all Claims or demands by holders of Priority Tax Claims for post-Petition Date interest or penalties thereon, except as may be allowed by the Court, shall be disallowed by the Plan and the Confirmation Order, and the holders of Priority Tax Claims shall not assess or attempt to collect interest or penalties from the Estate or its properties. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter of the Code. |

---

### Article 4: Treatment of Claims and Interests Under the Plan

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impaired | Treatment |
|---|---|---|
| **Administrative Expenses 11 U.S.C. § 503(b), 507(a)(2)** | No | Unpaid portion of Allowed Claims paid in full in cash on Effective Date unless Professional agrees to a different treatment |
| **Priority Tax Claims** | Yes | To the extent such claim becomes an Allowed Claim, paid in full the later of (i) the Effective Date, (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date with interest at underpayment rate specified in 26 U.S.C. § 6621 or 11 U.S.C. § 511, or (iii) such other terms as may be agreed upon by such holder and Debtor. |
| **Class 1 - Priority claims under § 507(a)** | Yes | To the extent such claim becomes an Allowed Claim, paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date with interest at underpayment rate specified in 26 U.S.C. § 6621 or 11 U.S.C. § 511. |

---

Official Form 425A                    **Plan of Reorganization for Small Business Under Chapter 11**

Debtor Name  CCC CONSULTING CORPORATION                              Case number 2:22-bk-16853-WB

| | | |
|---|---|---|
| **Class 2 – Secured claim of Small Business Administration** | Yes | Impaired to the extent the contractual monthly payments were modified by applicable cash collateral stipulation(s) and accompanying orders (i.e., Docket Nos. 28, 60, 70, and 90) – Notwithstanding the foregoing, the contractual rights of the SBA and the Debtor under that certain Note, Loan Authorization and Agreement, and Security Agreement shall continue to control. |
| **Class 3 – Secured claim of ODK Capital, LLC (formerly Celtic Bank)** | Yes | The Claim of ODK Capital, LLC, to the extent it becomes an Allowed Secured Claim, shall be satisfied in the following manner:  Paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date.   To the extent it becomes an Allowed Secured Claim, such Secured Claim shall accrue interest from the Effective Date on the unpaid balance of the Secured Claim at the rate of 5%.  Debtor shall have the right to pay the balance of the Secured Claim in full at any time on or after the Effective Date without premium or penalty of any kind. |
| **Class 4 – Secured Claim of Pinnacle Business Funding LLC** | Yes | The Claim of Pinnacle Business Funding LLC, to the extent it becomes an Allowed Secured Claim, shall be satisfied in the following manner:  Paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date.   To the extent it becomes an Allowed Secured Claim, such Secured Claim shall accrue interest from the Effective Date on the unpaid balance of the Secured Claim at the rate of 5%.  Debtor shall have the right to pay the balance of the Secured Claim in full at any time on or after the Effective Date without premium or penalty of any kind. |
| **Class 5 –  Secured Claim of Kalamata Capital LLC** | Yes | The Claim of Kalamata Capital LLC, to the extent it becomes an Allowed Secured Claim, shall be satisfied in the following manner:  Paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date.   To the extent it becomes an Allowed Secured Claim, such Secured Claim shall accrue interest from the Effective Date on the unpaid balance of the Secured Claim at the rate of 5%.  Debtor shall have the right to pay the balance of the Secured Claim in full at any time on or after the Effective Date without premium or penalty of any kind. |
| **Class 6 –  Non-priority General Unsecured Claims** | Yes | Each holder of an Allowed Class 6 Claim will be paid its pro-rata share of the Debtor's net disposable income in bi-annual installments, due on each six (6) month anniversary of the Effective Date of the Plan and ending on the last such date that is no more than five (5) years after the Effective Date.  Debtor shall have the right to pay the balance of any Allowed Claim in full at any time on or after the Effective Date without premium or penalty of any kind. |
| **Class 7 –  Interest Holders (Reorganized Debtor)** | No | Unimpaired.  The equity interest holder shall retain his interest in the Debtor. |

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: |
| | | (i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is Allowed by a final non-appealable order. |

| Debtor Name | CCC CONSULTING CORPORATION | Case number 2:22-bk-16853-WB |
|---|---|---|

| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |
|---|---|---|

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: |
|---|---|---|

Lease for Suite B (consisting of 4,052 leasable square feet) at 671 Laurel St San Carlos, CA - JMS Development Partners, as amended by the Second Amendment to Retail Lease (the "**Lease**"), and as described below in Article 10: Other Provisions.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

**A.    Implementation of the Plan and Execution of its Terms.**

1.    Implementation.

Debtor proposes to implement and consummate the Plan through the means contemplated sections 1123(a)(5)(A), (B), (D), (E) and (G), 1123(a)(8), 1123(b)(1), (b)(2), (b)(3)(A) and (B), (b)(5) and (b)(6) and/or (d) of the Bankruptcy Code, and pursuant to all otherwise applicable laws, orders and regulations.

2.    Reorganized Debtor and Revesting of Assets.

On the Effective Date, title to all assets, claims, causes of action, properties, and business operations of Debtor and of the Estate shall revest in Reorganized Debtor, and thereafter, the Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in the Plan. From and after the Effective Date, except as otherwise described in the Plan, the Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of the Court, except as otherwise provided herein. From and after the Effective Date, in accordance with the terms of the Plan and the Confirmation Order, Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with the Plan.

3.    Disbursing Agent.

As applicable, Reorganized Debtor shall act as disbursing agent, without bond, for purposes of making transfers and payments under the Plan.

4.    Funding for the Plan.

Debtor's interest in Cash and future income are its most significant assets that will be major sources of funding under the Plan. The Plan will be funded by the Debtor's post-petition "disposable income" over a five (5) year period after the Effective Date. Only creditors holding Allowed Claims will receive distributions and a reserve will be set up for filed or scheduled claims that are disputed and will be subject to a claim objection. Any claimant whose claim was listed as disputed, contingent, or unliquidated who did not file a claim by the claims bar date shall not receive any distributions under the Plan.

5.    Post-Confirmation Management.

Except as set forth expressly herein to the contrary, upon the Effective Date, Reorganized Debtor will remain in the possession of its property and the management of its affairs. Except as set forth expressly herein to the

| Debtor Name   CCC CONSULTING CORPORATION | Case number 2:22-bk-16853-WB |
|---|---|

contrary, the Reorganized Debtor may continue to operate and manage all assets in the Estate from and after the Effective Date.

The duties of the Reorganized Debtor shall include preparing and filing the post-confirmation status reports with the United States Trustee and paying all post-confirmation quarterly fees of the United States Trustee until the Case is dismissed or a final decree has been entered, whichever occurs first.

6. <u>Employment and Compensation of Professionals.</u>

In carrying out its duties under the Plan, Reorganized Debtor may use the services of professionals as he deems appropriate. Except as set forth herein to the contrary, any professional employed by the Reorganized Debtor in this Case after the confirmation of the Plan seeking payment of its post-confirmation fees and costs will be entitled to seek payment of such fees and costs without the need for any further order of the Bankruptcy Court.

7. <u>Transfer of Recovery Rights to Reorganized Debtor.</u>

Pursuant Section 1123(b)(3) of the Code, all Recovery Rights of Debtor and the Estate, including but not limited to all Recovery Rights that could be brought under any Sections 362, 510, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and under applicable non-bankruptcy law, shall be retained, owned and enforced by the Reorganized Debtor and may be pursued by the Reorganized Debtor, at its option, after the Effective Date with like manner and effect as if commenced prior to the Confirmation Date. The proceeds of any recovery with respect to such Recovery Rights shall constitute the property of the Reorganized Debtor. Notwithstanding the foregoing, the Recovery Rights are preserved for the Subchapter V Trustee for the benefit of the Estate and its Creditors in the event of a liquidation.

## Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
|---|---|---|

"***Administrative Claim***" means any right to payment constituting a cost or expense of administration of the Case of a kind specified under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving Debtor's estate, any actual and necessary costs and expenses of operating Debtor's business, any indebtedness or obligations incurred or assumed by Debtor in connection with the conduct of its business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under Sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against Debtor's Estate under Section 1930of chapter 123 of title 28 of the United States Code and any Claim for goods delivered to Debtor within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to Section 503(b)(9) of the Bankruptcy Code.

"***Allowed***" means, with reference to any Claim, (a) any Claim against Debtor that has been listed by Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not a Disputed Claim as of the Claims Objection Deadline, or (d) any Claim, the amount or existence of which, if it is a Disputed Claim, (i) has been determined by a Final Order of a court of competent jurisdiction other than the Court, or (ii) has been allowed by Final Order of the Court; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder.

"***Allowed Administrative Claim***" means that portion of an Administrative Claim which is an Allowed Claim.

"***Allowed Priority Claim***" means that portion of a Priority Claim which is an Allowed Claim.

"***Allowed Priority Tax Claim***" means that portion of a Priority Tax Claim which is an Allowed Claim.

"***Allowed Secured Claim***" means that portion of a Secured Claim which is an Allowed Claim.

"***Allowed General Unsecured Claim***" means that portion of a General Unsecured Claim which is an Allowed Claim.

"***Ballot***" means each of the ballot forms distributed with the Plan to each holder of an impaired Claim (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

"***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, in effect on the date hereof.

"***Bankruptcy Court***" or "***Court***" means the United States Bankruptcy Court for the Central District of California.

"***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and local rules and general orders of the Court, as the context may require.

"***Business Day***" means any day other than a Saturday, a Sunday or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"***Cash***" means lawful currency of the United States and equivalents thereof, including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

"***Claim***" or "***Claims***" has that meaning as defined in Code Sections 101(5)(A) and (B), means (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"***Claim(s) Objection***" or "***Objection to Claim(s)***" whether capitalized below or not, means any motion, contested proceeding or adversary proceeding whereby any party in interest seeks the disallowance of a Claim, or seeks to have the amount, priority, security or validity of a Claim determined for any purpose.

"***Claim(s) Objection Deadline***" means (a) 60 days after the Effective Date, unless extended by an order of the Court, or (b) 30 days after the filing of an Administrative Claim, unless extended by an order of the Court; however, for avoidance of doubt, the Claims Objection Deadline shall be deemed to have been met by the filing of a claim objection, or any other contested or adversary proceeding challenging the amount, priority, validity or secured status of any portion of a claim, at any time prior to the Claims Objection Deadline.

"***Class***" means a group of Claims classified together in a class designated in the Plan.

"***Confirmation Order***" means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"***Creditor***" means any holder of a Claim, as defined by the Bankruptcy Code, Section 101(10).

"***Debtor***" means CCC Consulting Corporation, whether as debtor or as debtor-in-possession.

"***Disbursing Agent***" means the person charged with making Distributions pursuant to the terms of the Plan.  The Disbursing Agent shall be Debtor.

"***Disputed Claim***" means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed by the Claims Bar Date and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) that is not listed in the Schedules; or (b) any Claim as to any portion of which Debtor or any other party in interest has

Debtor Name  CCC CONSULTING CORPORATION                                    Case number 2:22-bk-16853-WB

filed an objection, request for estimation, or other contested or adversary proceeding challenging the amount, priority, validity or secured status on or before the Claims Objection Deadline fixed by the Plan, Code, Rules or the Court, except to the extent that such objection, request for estimation or other adversary or contested proceeding is withdrawn or determined by a Final Order in favor of the holder of such Claim.

"*Distribution*" means the Cash or other value required to be distributed under the Plan to the holders of Allowed Claims.

"*Entity*" means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any subdivision thereof.

"*Estate*" means, with respect to Debtor, the estate created by Section 541(a) of the Bankruptcy Code upon the Petition Date.

"*Final Order*" means an order or judgment of the Court the operation or effect of which has not been stayed, and as to which the time to appeal or to seek reargument or rehearing has passed, and as to which no appeal, reargument, or petition for rehearing or certiorari has been taken or is pending; except that with respect to appellate jurisdiction, the term "Final Order" shall have that meaning ascribed to it by applicable law.

"*General Unsecured Claim*" means an unsecured Claim against Debtor, however arising, not entitled to priority under Section 507 of the Bankruptcy Code.

"*Other Priority Claim*" means a Claim, other than an Administrative Claim or a Priority Tax Claim, which, if allowed, would be entitled to priority under Section 507(a) of the Bankruptcy Code.

"*Petition Date*" means December 16, 2022.

"*Plan*" means the Debtor's "Second Amended Plan of Reorganization for Small Business Under Chapter 11" dated December 15, 2023 (including all exhibits and attachments, each of which is hereby incorporated and made part of the Plan), as modified or amended from time to time in accordance with Section 1127 of the Bankruptcy Code.

"*Plan Term*" means a period of sixty (60) months following the Effective Date.

"*Pro Rata*" means proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.

"*Priority Tax Claim*" means a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"*Professionals*" means those Entities (a) employed in the Case under Sections 327 or 1103 of the Bankruptcy Code, and (b) entitled, under Sections 328, 330, 331, 503(b)**Error! Bookmark not defined.**, 506(b), 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting or other professional services and the costs and expenses related to such services from Debtor or the Estate.

"*Recovery Rights*" means any and all manner of causes of action, claims, obligations, suits, debts, judgments and demands whatsoever, whether in law or in equity, including, but not limited to, actions to subordinate Claims under Section 510 of the Bankruptcy Code and avoidance power actions set forth in Sections 544 through 550, inclusive, of the Bankruptcy Code.

"*Reorganized Debtor*" means Debtor on and after the Effective Date.

"*Secured Claims*" means Claims secured by a lien on any property of the Estate, but only to the extent of the value of the interest of the holder of such Allowed Claim in the interest of the Estate in such property, the calculation of which shall not include any demand for default interest, penalty interest or other similar demands.  Secured Claims are included in Classes 1

| Debtor Name | CCC CONSULTING CORPORATION | Case number 2:22-bk-16853-WB |
|---|---|---|

through 7 herein.

"***Subchapter V Trustee***" means the duly appointed subchapter V Trustee in this Case.

"***Unclaimed Property***" means any funds or other Property to be distributed to Creditors pursuant to the Plan, which, after an attempted distribution, has not been received by the rightful Creditor.  Unclaimed property shall include checks and any other property that have been returned as undeliverable without a proper forwarding address, or which were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

"***United States Trustee***" means the United States Trustee for the Central District of California, Santa Ana Division.

***Voting Deadline***" means the deadline established by the Bankruptcy Court for parties-in-interest entitled to vote to submit their ballots accepting or rejecting the Plan.

| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
|---|---|---|
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate governance** | The Debtor shall remain in business.  Edmund Cutting will remain the Chief Executive Officer and Chief Financial Officer of the Reorganized Debtor and his compensation shall remain consistent with his compensation during this Case until the payments due under the Plan to Classes 1 to 6 are made.

The sole equity security holder shall retain his interest in the Reorganized Debtor.

On the Effective Date, all actions contemplated by the Plan will be deemed authorized and approved in all respects, and the Reorganized Debtor shall be authorized and directed to implement the provisions of the Plan, and any other agreements, documents, and instruments contemplated by the Plan.

As of the Effective Date, the Reorganized Debtor may operate its business without the need for supervision of, or any authorization from, the Bankruptcy Court or the United States Trustee, free of any restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions specifically required by the Plan or Confirmation Order.  The Reorganized Debtor shall take such action as is necessary under the laws of the State of California, federal law, and other applicable state law to effect the terms and provisions of the Plan and related documents. |

Debtor Name  <u>CCC CONSULTING CORPORATION</u>                    Case number <u>2:22-bk-16853-WB</u>

After the Effective Date, the Reorganized Debtor shall be permitted to retain or employ any professional (or maintain employment of any professional Debtor employed prior to the Effective Date) without the need for any notice to creditors and without the need for obtaining any approval or order of the Bankruptcy Court.  Any professional employed by Debtor or Reorganized Debtor, as applicable, after confirmation of the Plan will be entitled to obtain payment of all fees and costs incurred after confirmation of the Plan in the ordinary course of business as a post-confirmation operating expense from funds of the estate of Debtor, Debtor, or the Reorganized Debtor, without the need for any notice to creditors or other parties in interest and without the need for obtaining any approval of the Bankruptcy Court.

[8.08  **Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain, after the Effective Date, exclusive jurisdiction of all matters arising out of, arising in or related to, this Case, to the fullest extent permitted by applicable law, including, without limitation, the matters set forth below:

*Allowance of Claims.*

The Court shall retain exclusive jurisdiction to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim (to the extent permitted under applicable law).

*Executory Contract and Unexpired Lease Proceedings.*

The Court shall retain exclusive jurisdiction to act with respect to proceedings regarding the rejection of any executory contract or unexpired lease of Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code and the Plan, and to determine the allowance and proper classification of any Claims arising from the resolution of any such proceedings.

*Adversary and Contested Proceedings.*

The Court shall retain exclusive jurisdiction to resolve and adjudicate all adversary and contested proceedings, whether pending as of or brought after the Effective Date of the Plan, and to issue orders, judgments and decrees with respect to matters ancillary thereto, including but not limited to enforcement of its own judgments, orders and decrees.

*Plan Interpretation, Implementation, and Modification.*

The Court shall retain jurisdiction to resolve controversies and disputes regarding the interpretation of the Plan and the Confirmation Order.  The Court shall retain jurisdiction to implement and enforce the provisions of the Plan and the Confirmation Order, and otherwise to enter orders in aid of confirmation and implementation of the Plan.  The Court shall retain jurisdiction to modify the Plan pursuant to Code Section 1127 and the applicable Rules.  The Court shall retain jurisdiction to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order.  The Court shall retain jurisdiction to correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder of an Allowed Claim are not materially and adversely affected thereby.  The Court shall retain jurisdiction to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

| Debtor Name | CCC CONSULTING CORPORATION | Case number 2:22-bk-16853-WB |
|---|---|---|

*Final Decree.*

The Court shall retain jurisdiction to enter a final decree closing the Case.

*Failure of the Bankruptcy Court to Exercise Jurisdiction.*

If the Bankruptcy Court declines to exercise jurisdiction over any matter arising under, arising in or related to Debtor, the Case, or the Estate, including with respect to the matters set forth herein, this provision shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## Article 9: Discharge

### Discharge if the Debtor is an individual under Subchapter V

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(i) imposed by this Plan; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

In addition to assumption of the Lease, the Plan also seeks approval of that certain Second Amendment to Retail Lease (the "**Lease Amendment**"), a copy of which is attached hereto as **Exhibit 3**. As more fully described therein, if approved, the Lease Amendment will allow the Debtor the opportunity to continue to operate its only remaining location in San Carlos, California. Without approval of the Lease Amendment, the Debtor will be forced to cease its operations and either seek dismissal or conversion of this Case. With approval, the Debtor will be able to continue to operate, preserve approximately 40 jobs for its employees, and continue to weather the difficult economic times prevailing in the industry and more broadly.

Official Form 425A                    **Plan of Reorganization for Small Business Under Chapter 11**

Debtor Name   CCC CONSULTING CORPORATION                    Case number 2:22-bk-16853-WB

Respectfully submitted,

✖ _____          Edmund Cutting, CEO/CFO
[Signature of the Plan Proponent]                [Printed Name]


✖  /s/ James E. Till _____          James E. Till _____
[Signature of the Attorney for the Plan Proponent]      [Printed Name]

Official Form 425A          **Plan of Reorganization for Small Business Under Chapter 11**

# EXHIBIT 1

# Liquidation Analysis

EXHIBIT 1 - Page 13

## Exhibit 1 – Liquidation Analysis

Confirmation of the Plan requires that, with respect to each creditor and/or equity interest holder (as applicable) who does not accept the Plan, such creditor and/or equity interest holder will receive at least as much under the Plan as such creditor and/or equity interest holder would receive in a chapter 7 liquidation.  Stated differently, confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if Debtor were liquidated under chapter 7 of the Bankruptcy Code.  To determine what holders of Claims would receive if the Debtor was liquidated under chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case.  The Cash amount that would be available for satisfaction of Claims would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of Debtor, augmented by the unencumbered Cash, if any, held by Debtor at the time of the commencement of the liquidation case.  Such Cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority Claims that might result from the use of chapter 7 for the purposes of liquidation.

Debtor's costs of liquidation under chapter 7 would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other professionals that such a trustee might engage.

To determine if the Plan is in the best interests of each holder of an Allowed Claim, the value of the distributions from the proceeds of a liquidation of Debtor's unencumbered assets and properties, after subtracting the amounts attributable to the foregoing Claims, are then compared with the value of the property offered to such Classes of Claims under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Creditors, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, and (ii) the likely erosion in value of assets in a chapter 7 case in the context of an expeditious liquidation and the "forced sale" atmosphere that would prevail under chapter 7, Debtor has determined that confirmation of the Plan will provide each

**EXHIBIT 1 - Page 14**

holder of an Allowed Claim with a recovery that is not less than such holder would receive pursuant to an immediate liquidation of Debtor's assets under chapter 7.

Debtor's Liquidation Analysis is set forth below.  This analysis provides a summary of the liquidation values of Debtor's assets, assuming a chapter 7 liquidation in which a trustee appointed by the Court would liquidate the assets of Debtor's estate.  Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by Debtor, are inherently subject to uncertainties and contingencies beyond its control.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change.  Accordingly, the values reflected might not be realized if Debtor was, in fact, to undergo such a liquidation.

| Asset | Fair Market Value | Liquidation Value |
|-------|-------------------|-------------------|
| Cash (est.) | $20,000 | $20,000 |
| Accounts Receivable | $6,000 | $6,000 |
| Inventory | $2,000 | $500 |
| Misc. furniture, fixtures, etc.[1] | $29,200 | $3,000 |
| LimNexus LLP[2] | $10,000 | $0 |
| Total | $67,100 | $29,500 |

Administrative Claims (est.):  $   100,000

Priority Tax Claims (est.):  $   104,026

Total Secured Claims:  $   499,596

Total Unsecured Claims:  $   800,566

Total Claims:  $1,504,188

---

[1] This net liquidation value assumes a "fire sale" amount.

[2] Estimated amount of remaining retainer at the time of a hypothetical chapter 7.

EXHIBIT 1 - Page 15

Below is a demonstration, in tabular format, that all dissenting Creditors will receive at least as much under the Plan as such creditor would receive under a chapter 7 liquidation.[3]

| Claims & Classes | Estimated Payout Percentage Under the Plan | Est. Payout Percentage in Chapter 7 Liquidation |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 – Priority Claims | 100% | 0% |
| Class 2 – Secured claim of Small Business Administration | 100% | 6% |
| Class 3 – Secured claim of ODK Capital, LLC (formerly Celtic Bank) | 0% | 0% |
| Class 4 – Secured Claim of Pinnacle Business Funding LLC | 0% | 0% |
| Class 5 – Secured Claim of Kalamata Capital LLC | 0% | 0% |
| Class 6 – Non-priority General Unsecured Claims | 5-10% | 0% |
| Class 7 – Interests of Debtor in Property of Estate | n/a | n/a |

---

[3] The percentage figures set forth in this chart assume that the Secured Claims of ODK Capital, LLC, Pinnacle Business Funding LLC, and Kalamata Capital LLC will be each disallowed as a Secured Claim given the value of the underlying security available to satisfy the Allowed Secured Claim of the Small Business Administration will account for the entire amount of the Debtor's assets.

EXHIBIT 1 - Page 16

# EXHIBIT 2

# Financial Projections

**EXHIBIT 2 - Page 17**

# Patxis Pizza San Carlos New
## Profit and Loss
### January - December 2024

|  | Total |
|---|---:|
| **Income** | |
| **4100 Food Sales** | |
| 4110 UberEats | 86,125.02 |
| 4120 DoorDash | 186,744.22 |
| 4140 Slice | 15,129.63 |
| 4150 Grubhub | 37,068.38 |
| 4170 Food Discounts | -31,567.07 |
| 4310 N/A Beverage | 18,320.51 |
| 4100 Food Sales | 552,587.95 |
| **Total 4100 Food Sales** | $                864,408.64 |
| 4300 Beverage Sales | |
| 4320 Liquor Sales | 66,109.50 |
| 4330 Beer Sales | 78,342.50 |
| 4350 Wine Sales | 23,076.50 |
| **Total 4300 Beverage Sales** | $                167,528.50 |
| 4500 Merchandise Sales | 278.29 |
| 4600 Catering & contracts | 10,423.06 |
| **Total Income** | $             1,042,638.49 |
| **Cost of Goods Sold** | |
| 5200 Food Cost | |
| 5210 Dry | 52,512.59 |
| 5220 Refrigerated | 123,808.85 |
| 5230 Frozen | 43,179.38 |
| 5310 N/A Beverage Cost | 5,270.84 |
| **Total 5200 Food Cost** | $                224,771.66 |
| 5300 Beverage Cost | |
| 5320 Liquor Cost | 8,441.22 |
| 5330 Beer Cost | 22,035.81 |
| 5340 Wine Cost | 8,338.17 |
| **Total 5300 Beverage Cost** | $                  38,815.20 |
| **Total Cost of Goods Sold** | $                263,586.86 |
| **Gross Profit** | $                779,051.63 |
| **Expenses** | |
| 6000 Payroll Expenses. | 40,795.58 |
| 7100 Direct Operating Expenses | |
| 7120 Restaurant & Kitchen Supply | 2,979.27 |
| 7130 Cleaning Supply | 4,395.10 |
| 7140 Decoration & Guest Supply | 17,949.31 |
| 7150 Linen Services | 5,639.68 |
| 7160 Permit & License | 1,789.25 |
| 7170 Shipping, Freight & Delivery | 2,275.15 |
| 7180 CA Bottle Deposit | 47.30 |
| **Total 7100 Direct Operating Expenses** | $                  35,075.06 |
| 7300 Marketing Expenses | 1,137.50 |

**EXHIBIT 2 - Page 18**

| | | |
|---|---|---:|
| **7400 Travel 1** | | 7,523.36 |
| **7450 Automobile Expenses** | | 4,396.30 |
| **7700 POS Fee** | | 2,052.38 |
| **7750 Telephone and Internet** | | 8,590.39 |
| **7800 General and Administrative** | | |
| **7810 Bad Debts    Over/Short** | | 4,092.14 |
| **7820 Bank Fees** | | 1,490.02 |
| **7822 Merchant Account Fees** | | 22,533.96 |
| **Total 7820 Bank Fees** | $ | **24,023.98** |
| **7830 Insurance Expense** | | 3,241.27 |
| **7890 Office Expenses** | | |
| **7891 Dues & subscriptions** | | 873.43 |
| **Total 7890 Office Expenses** | $ | **873.43** |
| **Total 7800 General and Administrative** | $ | **32,230.82** |
| **7893 Management Fee** | | 34,000.00 |
| **8100 Facilities** | | |
| **8110 Rent & Lease** | | 120,000.00 |
| **8120 Utilities** | | 4,653.08 |
| **8150 Repairs and Maintenance** | | 5,428.60 |
| **Total 8100 Facilities** | $ | **130,081.68** |
| **8200 Equipment Rental** | | 5,226.57 |
| **8600 Sales Tax Expense** | | 1,409.46 |
| **Direct Operating Expense** | | |
| **7301 Franchise Fees** | | 7,149.01 |
| **Total Direct Operating Expense** | $ | **7,149.01** |
| **Payroll expenses** | | |
| **6100 FOH Wages** | | |
| **6110 FOH Management** | | 120,556.46 |
| **6120 FOH Hourly** | | 135,608.19 |
| **Total 6100 FOH Wages** | $ | **256,164.65** |
| **6200 BOH Wages** | | |
| **6210 BOH Management** | | 19,615.38 |
| **6220 BOH Hourly** | | 201,777.04 |
| **Total 6200 BOH Wages** | $ | **221,392.42** |
| **6300 Administrative Wages** | | 1,507.50 |
| **6500 Employee Benefits** | | -2,246.59 |
| **6700 Employers Payroll Taxes** | | 17,736.73 |
| **Total Payroll expenses** | $ | **494,554.71** |
| **Total Expenses** | $ | **804,222.82** |
| **Net Operating Income** | -$ | **25,171.19** |
| **Other Income** | | |
| **9901 Other Miscellaneous Income** | | 992.90 |
| **Total Other Income** | $ | **992.90** |
| **Net Other Income** | $ | **992.90** |
| **Net Income** | -$ | **24,178.29** |

Friday, Dec 15, 2023 05:30:57 PM GMT-8 - Accrual Basis

**EXHIBIT 2 - Page 19**

# Patxis Pizza San Carlos New
# Profit and Loss
### January - December 2025

| | | Total |
|---|---|---|
| **Income** | | |
| 4100 Food Sales | | 552,587.95 |
| 4110 UberEats | | 86,125.02 |
| 4120 DoorDash | | 186,744.22 |
| 4140 Slice | | 15,129.63 |
| 4150 Grubhub | | 17,068.38 |
| 4170 Food Discounts | | -31,567.07 |
| 4310 N/A Beverage | | 18,320.51 |
| **Total 4100 Food Sales** | $ | **844,408.64** |
| 4300 Beverage Sales | | |
| 4320 Liquor Sales | | 66,109.50 |
| 4330 Beer Sales | | 78,342.50 |
| 4350 Wine Sales | | 23,076.50 |
| **Total 4300 Beverage Sales** | $ | **167,528.50** |
| 4500 Merchandise Sales | | 278.29 |
| 4600 Catering & contracts | | 10,423.06 |
| **Total Income** | $ | **1,022,638.49** |
| **Cost of Goods Sold** | | |
| 5200 Food Cost | | |
| 5210 Dry | | 52,512.59 |
| 5220 Refrigerated | | 123,808.85 |
| 5230 Frozen | | 43,179.38 |
| 5310 N/A Beverage Cost | | 5,270.84 |
| **Total 5200 Food Cost** | $ | **224,771.66** |
| 5300 Beverage Cost | | |
| 5320 Liquor Cost | | 8,441.22 |
| 5330 Beer Cost | | 22,035.81 |
| 5340 Wine Cost | | 8,338.17 |
| **Total 5300 Beverage Cost** | $ | **38,815.20** |
| **Total Cost of Goods Sold** | $ | **263,586.86** |
| **Gross Profit** | $ | **759,051.63** |
| **Expenses** | | |
| 6000 Payroll Expenses. | | 40,795.58 |
| 7100 Direct Operating Expenses | | |
| 7120 Restaurant & Kitchen Supply | | 2,979.27 |
| 7130 Cleaning Supply | | 4,395.10 |
| 7140 Decoration & Guest Supply | | 27,949.31 |
| 7150 Linen Services | | 5,639.68 |
| 7160 Permit & License | | 1,789.25 |
| 7170 Shipping, Freight & Delivery | | 2,275.15 |
| 7180 CA Bottle Deposit | | 47.30 |
| **Total 7100 Direct Operating Expenses** | $ | **45,075.06** |
| 7300 Marketing Expenses | | 1,137.50 |

**EXHIBIT 2 - Page 20**

| | | |
|---|---|---|
| **7400 Travel 1** | | 7,523.36 |
| **7450 Automobile Expenses** | | 4,396.30 |
| **7700 POS Fee** | | 2,052.38 |
| **7750 Telephone and Internet** | | 8,590.39 |
| **7800 General and Administrative** | | |
| **7810 Bad Debts    Over/Short** | | 4,092.14 |
| **7820 Bank Fees** | | 1,490.02 |
| **7822 Merchant Account Fees** | | 12,533.96 |
| **Total 7820 Bank Fees** | $ | **14,023.98** |
| **7830 Insurance Expense** | | 3,241.27 |
| **7890 Office Expenses** | | |
| **7891 Dues & subscriptions** | | 873.43 |
| **Total 7890 Office Expenses** | $ | **873.43** |
| **Total 7800 General and Administrative** | $ | **22,230.82** |
| **7893 Management Fee** | | 34,000.00 |
| **8100 Facilities** | | |
| **8110 Rent & Lease** | | 120,000.00 |
| **8120 Utilities** | | 4,653.08 |
| **8150 Repairs and Maintenance** | | 5,428.60 |
| **Total 8100 Facilities** | $ | **130,081.68** |
| **8200 Equipment Rental** | | 5,226.57 |
| **8600 Sales Tax Expense** | | 1,409.46 |
| **Direct Operating Expense** | | |
| **7301 Franchise Fees** | | 7,149.01 |
| **Total Direct Operating Expense** | $ | **7,149.01** |
| **Payroll expenses** | | |
| **6100 FOH Wages** | | |
| **6110 FOH Management** | | 120,556.46 |
| **6120 FOH Hourly** | | 135,608.19 |
| **Total 6100 FOH Wages** | $ | **256,164.65** |
| **6200 BOH Wages** | | |
| **6210 BOH Management** | | 19,615.38 |
| **6220 BOH Hourly** | | 191,777.04 |
| **Total 6200 BOH Wages** | $ | **211,392.42** |
| **6300 Administrative Wages** | | 1,507.50 |
| **6500 Employee Benefits** | | -2,246.59 |
| **6700 Employers Payroll Taxes** | | 17,736.73 |
| **Total Payroll expenses** | $ | **484,554.71** |
| **Total Expenses** | $ | **794,222.82** |
| **Net Operating Income** | -$ | **35,171.19** |
| **Other Income** | | |
| **9901 Other Miscellaneous Income** | | 992.90 |
| **Total Other Income** | $ | **992.90** |
| **Net Other Income** | $ | **992.90** |
| **Net Income** | -$ | **34,178.29** |

Friday, Dec 15, 2023 05:30:57 PM GMT-8 - Accrual Basis

**EXHIBIT 2 - Page 21**

# Patxis Pizza San Carlos New
## Profit and Loss
### January - December 2026

|  | Total |
|---|---|
| **Income** | |
| **4100 Food Sales** | |
| 4110 UberEats | 86,125.02 |
| 4120 DoorDash | 186,744.22 |
| 4140 Slice | 15,129.63 |
| 4150 Grubhub | 37,068.38 |
| 4170 Food Discounts | -31,567.07 |
| 4310 N/A Beverage | 18,320.51 |
|  | 582,587.95 |
| **Total 4100 Food Sales** | $ 894,408.64 |
| **4300 Beverage Sales** | |
| 4320 Liquor Sales | 86,109.50 |
| 4330 Beer Sales | 78,342.50 |
| 4350 Wine Sales | 23,076.50 |
| **Total 4300 Beverage Sales** | $ 187,528.50 |
| 4500 Merchandise Sales | 278.29 |
| 4600 Catering & contracts | 10,423.06 |
| **Total Income** | $ 1,092,638.49 |
| **Cost of Goods Sold** | |
| **5200 Food Cost** | |
| 5210 Dry | 52,512.59 |
| 5220 Refrigerated | 100,000.00 |
| 5230 Frozen | 43,179.38 |
| 5310 N/A Beverage Cost | 5,270.84 |
| **Total 5200 Food Cost** | $ 200,962.81 |
| **5300 Beverage Cost** | |
| 5320 Liquor Cost | 8,441.22 |
| 5330 Beer Cost | 22,035.81 |
| 5340 Wine Cost | 8,338.17 |
| **Total 5300 Beverage Cost** | $ 38,815.20 |
| **Total Cost of Goods Sold** | $ 239,778.01 |
| **Gross Profit** | $ 852,860.48 |
| **Expenses** | |
| 6000 Payroll Expenses. | 40,795.58 |
| **7100 Direct Operating Expenses** | |
| 7120 Restaurant & Kitchen Supply | 2,979.27 |
| 7130 Cleaning Supply | 4,395.10 |
| 7140 Decoration & Guest Supply | 27,949.31 |
| 7150 Linen Services | 5,639.68 |
| 7160 Permit & License | 1,789.25 |
| 7170 Shipping, Freight & Delivery | 2,275.15 |
| 7180 CA Bottle Deposit | 47.30 |
| **Total 7100 Direct Operating Expenses** | $ 45,075.06 |
| 7300 Marketing Expenses | 1,137.50 |

**EXHIBIT 2 - Page 22**

| | | |
|---|---|---:|
| **7400 Travel 1** | | 7,523.36 |
| **7450 Automobile Expenses** | | 4,396.30 |
| **7700 POS Fee** | | 2,052.38 |
| **7750 Telephone and Internet** | | 8,590.39 |
| **7800 General and Administrative** | | |
| 7810 Bad Debts    Over/Short | | 4,092.14 |
| 7820 Bank Fees | | 1,490.02 |
| 7822 Merchant Account Fees | | 22,533.96 |
| **Total 7820 Bank Fees** | $ | **24,023.98** |
| 7830 Insurance Expense | | 3,241.27 |
| 7890 Office Expenses | | |
| 7891 Dues & subscriptions | | 873.43 |
| **Total 7890 Office Expenses** | $ | **873.43** |
| **Total 7800 General and Administrative** | $ | **32,230.82** |
| 7893 Management Fee | | 34,000.00 |
| **8100 Facilities** | | |
| 8110 Rent & Lease | | 120,000.00 |
| 8120 Utilities | | 4,653.08 |
| 8150 Repairs and Maintenance | | 5,428.60 |
| **Total 8100 Facilities** | $ | **130,081.68** |
| **8200 Equipment Rental** | | 5,226.57 |
| **8600 Sales Tax Expense** | | 1,409.46 |
| **Direct Operating Expense** | | |
| 7301 Franchise Fees | | 7,149.01 |
| **Total Direct Operating Expense** | $ | **7,149.01** |
| **Payroll expenses** | | |
| 6100 FOH Wages | | |
| 6110 FOH Management | | 120,556.46 |
| 6120 FOH Hourly | | 135,608.19 |
| **Total 6100 FOH Wages** | $ | **256,164.65** |
| 6200 BOH Wages | | |
| 6210 BOH Management | | 19,615.38 |
| 6220 BOH Hourly | | 201,777.04 |
| **Total 6200 BOH Wages** | $ | **221,392.42** |
| 6300 Administrative Wages | | 1,507.50 |
| 6500 Employee Benefits | | -2,246.59 |
| 6700 Employers Payroll Taxes | | 22,736.73 |
| **Total Payroll expenses** | $ | **499,554.71** |
| **Total Expenses** | $ | **819,222.82** |
| **Net Operating Income** | $ | **33,637.66** |
| **Other Income** | | |
| 9901 Other Miscellaneous Income | | 992.90 |
| **Total Other Income** | $ | **992.90** |
| **Net Other Income** | $ | **992.90** |
| **Net Income** | $ | **34,630.56** |

Friday, Dec 15, 2023 05:30:57 PM GMT-8 - Accrual Basis

**EXHIBIT 2 - Page 23**

# Patxis Pizza San Carlos New
# Profit and Loss
### January - December 2027

|  | Total |
|---|---:|
| **Income** | |
| **4100 Food Sales** | |
| 4110 UberEats | 86,125.02 |
| 4120 DoorDash | 186,744.22 |
| 4140 Slice | 15,129.63 |
| 4150 Grubhub | 37,068.38 |
| 4170 Food Discounts | -31,567.07 |
| 4310 N/A Beverage | 18,320.51 |
| **Total 4100 Food Sales** | $ 864,408.64 |
| 4300 Beverage Sales | |
| 4320 Liquor Sales | 66,109.50 |
| 4330 Beer Sales | 78,342.50 |
| 4350 Wine Sales | 23,076.50 |
| **Total 4300 Beverage Sales** | $ 167,528.50 |
| 4500 Merchandise Sales | 278.29 |
| 4600 Catering & contracts | 10,423.06 |
| **Total Income** | $ 1,042,638.49 |
| **Cost of Goods Sold** | |
| 5200 Food Cost | |
| 5210 Dry | 52,512.59 |
| 5220 Refrigerated | 123,808.85 |
| 5230 Frozen | 43,179.38 |
| 5310 N/A Beverage Cost | 5,270.84 |
| **Total 5200 Food Cost** | $ 224,771.66 |
| 5300 Beverage Cost | |
| 5320 Liquor Cost | 8,441.22 |
| 5330 Beer Cost | 22,035.81 |
| 5340 Wine Cost | 8,338.17 |
| **Total 5300 Beverage Cost** | $ 38,815.20 |
| **Total Cost of Goods Sold** | $ 263,586.86 |
| **Gross Profit** | $ 779,051.63 |
| **Expenses** | |
| 6000 Payroll Expenses. | 40,795.58 |
| 7100 Direct Operating Expenses | |
| 7120 Restaurant & Kitchen Supply | 2,979.27 |
| 7130 Cleaning Supply | 4,395.10 |
| 7140 Decoration & Guest Supply | 27,949.31 |
| 7150 Linen Services | 5,639.68 |
| 7160 Permit & License | 1,789.25 |
| 7170 Shipping, Freight & Delivery | 2,275.15 |
| 7180 CA Bottle Deposit | 47.30 |
| **Total 7100 Direct Operating Expenses** | $ 45,075.06 |
| 7300 Marketing Expenses | 1,137.50 |

Note: 4100 Food Sales row shows 552,587.95

**EXHIBIT 2 - Page 24**

| | | |
|---|---|---:|
| **7400 Travel 1** | | 7,523.36 |
| **7450 Automobile Expenses** | | 4,396.30 |
| **7700 POS Fee** | | 2,052.38 |
| **7750 Telephone and Internet** | | 8,590.39 |
| **7800 General and Administrative** | | |
| **7810 Bad Debts    Over/Short** | | 4,092.14 |
| **7820 Bank Fees** | | 1,490.02 |
| **7822 Merchant Account Fees** | | 22,533.96 |
| **Total 7820 Bank Fees** | $ | **24,023.98** |
| **7830 Insurance Expense** | | 3,241.27 |
| **7890 Office Expenses** | | |
| **7891 Dues & subscriptions** | | 873.43 |
| **Total 7890 Office Expenses** | $ | **873.43** |
| **Total 7800 General and Administrative** | $ | **32,230.82** |
| **7893 Management Fee** | | 34,000.00 |
| **8100 Facilities** | | |
| **8110 Rent & Lease** | | 120,000.00 |
| **8120 Utilities** | | 4,653.08 |
| **8150 Repairs and Maintenance** | | 5,428.60 |
| **Total 8100 Facilities** | $ | **130,081.68** |
| **8200 Equipment Rental** | | 5,226.57 |
| **8600 Sales Tax Expense** | | 1,409.46 |
| **Direct Operating Expense** | | |
| **7301 Franchise Fees** | | 7,149.01 |
| **Total Direct Operating Expense** | $ | **7,149.01** |
| **Payroll expenses** | | |
| **6100 FOH Wages** | | |
| **6110 FOH Management** | | 120,556.46 |
| **6120 FOH Hourly** | | 135,608.19 |
| **Total 6100 FOH Wages** | $ | **256,164.65** |
| **6200 BOH Wages** | | |
| **6210 BOH Management** | | 24,615.38 |
| **6220 BOH Hourly** | | 201,777.04 |
| **Total 6200 BOH Wages** | $ | **226,392.42** |
| **6300 Administrative Wages** | | 1,507.50 |
| **6500 Employee Benefits** | | -2,246.59 |
| **6700 Employers Payroll Taxes** | | 17,736.73 |
| **Total Payroll expenses** | $ | **499,554.71** |
| **Total Expenses** | $ | **819,222.82** |
| **Net Operating Income** | -$ | **40,171.19** |
| **Other Income** | | |
| **9901 Other Miscellaneous Income** | | 992.90 |
| **Total Other Income** | $ | **992.90** |
| **Net Other Income** | $ | **992.90** |
| **Net Income** | -$ | **39,178.29** |

Friday, Dec 15, 2023 05:30:57 PM GMT-8 - Accrual Basis

**EXHIBIT 2 - Page 25**

# Patxis Pizza San Carlos New
## Profit and Loss
### January - December 2028

| | Total |
|---|---:|
| **Income** | |
| **4100 Food Sales** | 600,587.95 |
| 4110 UberEats | 86,125.02 |
| 4120 DoorDash | 186,744.22 |
| 4140 Slice | 15,129.63 |
| 4150 Grubhub | 37,068.38 |
| 4170 Food Discounts | -31,567.07 |
| 4310 N/A Beverage | 18,320.51 |
| **Total 4100 Food Sales** | $ 912,408.64 |
| 4300 Beverage Sales | |
| 4320 Liquor Sales | 66,109.50 |
| 4330 Beer Sales | 78,342.50 |
| 4350 Wine Sales | 23,076.50 |
| **Total 4300 Beverage Sales** | $ 167,528.50 |
| 4500 Merchandise Sales | 278.29 |
| 4600 Catering & contracts | 10,423.06 |
| **Total Income** | $ 1,090,638.49 |
| **Cost of Goods Sold** | |
| 5200 Food Cost | |
| 5210 Dry | 52,512.59 |
| 5220 Refrigerated | 123,808.85 |
| 5230 Frozen | 43,179.38 |
| 5310 N/A Beverage Cost | 5,270.84 |
| **Total 5200 Food Cost** | $ 224,771.66 |
| 5300 Beverage Cost | |
| 5320 Liquor Cost | 8,441.22 |
| 5330 Beer Cost | 22,035.81 |
| 5340 Wine Cost | 8,338.17 |
| **Total 5300 Beverage Cost** | $ 38,815.20 |
| **Total Cost of Goods Sold** | $ 263,586.86 |
| **Gross Profit** | $ 827,051.63 |
| **Expenses** | |
| 6000 Payroll Expenses. | 10,795.58 |
| 7100 Direct Operating Expenses | |
| 7120 Restaurant & Kitchen Supply | 2,979.27 |
| 7130 Cleaning Supply | 4,395.10 |
| 7140 Decoration & Guest Supply | 27,949.31 |
| 7150 Linen Services | 5,639.68 |
| 7160 Permit & License | 1,789.25 |
| 7170 Shipping, Freight & Delivery | 2,275.15 |
| 7180 CA Bottle Deposit | 47.30 |
| **Total 7100 Direct Operating Expenses** | $ 45,075.06 |
| 7300 Marketing Expenses | 1,137.50 |

EXHIBIT 2 - Page 26

| | | |
|---|---|---:|
| **7400 Travel 1** | | 7,523.36 |
| **7450 Automobile Expenses** | | 4,396.30 |
| **7700 POS Fee** | | 2,052.38 |
| **7750 Telephone and Internet** | | 8,590.39 |
| **7800 General and Administrative** | | |
| **7810 Bad Debts    Over/Short** | | 4,092.14 |
| **7820 Bank Fees** | | 1,490.02 |
| **7822 Merchant Account Fees** | | 22,533.96 |
| **Total 7820 Bank Fees** | $ | **24,023.98** |
| **7830 Insurance Expense** | | 3,241.27 |
| **7890 Office Expenses** | | |
| **7891 Dues & subscriptions** | | 873.43 |
| **Total 7890 Office Expenses** | $ | **873.43** |
| **Total 7800 General and Administrative** | $ | **32,230.82** |
| **7893 Management Fee** | | 34,000.00 |
| **8100 Facilities** | | |
| **8110 Rent & Lease** | | 120,000.00 |
| **8120 Utilities** | | 4,653.08 |
| **8150 Repairs and Maintenance** | | 5,428.60 |
| **Total 8100 Facilities** | $ | **130,081.68** |
| **8200 Equipment Rental** | | 5,226.57 |
| **8600 Sales Tax Expense** | | 1,409.46 |
| **Direct Operating Expense** | | |
| **7301 Franchise Fees** | | 7,149.01 |
| **Total Direct Operating Expense** | $ | **7,149.01** |
| **Payroll expenses** | | |
| **6100 FOH Wages** | | |
| **6110 FOH Management** | | 120,556.46 |
| **6120 FOH Hourly** | | 135,608.19 |
| **Total 6100 FOH Wages** | $ | **256,164.65** |
| **6200 BOH Wages** | | |
| **6210 BOH Management** | | 19,615.38 |
| **6220 BOH Hourly** | | 201,777.04 |
| **Total 6200 BOH Wages** | $ | **221,392.42** |
| **6300 Administrative Wages** | | 1,507.50 |
| **6500 Employee Benefits** | | -2,246.59 |
| **6700 Employers Payroll Taxes** | | 17,736.73 |
| **Total Payroll expenses** | $ | **494,554.71** |
| **Total Expenses** | $ | **784,222.82** |
| **Net Operating Income** | $ | **42,828.81** |
| **Other Income** | | |
| **9901 Other Miscellaneous Income** | | 992.90 |
| **Total Other Income** | $ | **992.90** |
| **Net Other Income** | $ | **992.90** |
| **Net Income** | $ | **43,821.71** |

Friday, Dec 15, 2023 05:30:57 PM GMT-8 - Accrual Basis

**EXHIBIT 2 - Page 27**

# EXHIBIT 3

# Lease Amendment

EXHIBIT 3 - Page 28

# SECOND AMENDMENT TO RETAIL LEASE

THIS SECOND AMENDMENT TO RETAIL LEASE ("**Amendment**") is dated as of December 11, 2023, between 671 LAUREL SAN CARLOS ASSOCIATES, LLC, a California limited liability company ("**Landlord-1**"), 677 LAUREL STREET ASSOCIATES, LLC, a California limited liability company ("**Landlord-2**" and, together with Landlord-1, collectively referred to herein as "**Landlord**"), and CCC CONSULTING CORPORATION, a California corporation ("**Tenant**").

## RECITALS

A.    Landlord and Tenant (as successor-in-interest to Layers, LLC) are parties to that certain Retail Lease dated as of October 21, 2013 (the "**Original Lease**"), as modified by that certain Lease Addendum No. 1 dated April 24, 2015 (the "**Addendum 1**"), that certain Assignment, Assumption & Amendment of Retail Lease dated June 15, 2020 (the "**Assignment**"), and that certain First Amendment of Retail Lease dated May 1, 2021 (the "**First Amendment**").  The Original Lease, as modified by the Addendum 1, Assignment and First Amendment is collectively referred to herein as the "**Lease**".

B.    The Lease is for the Premises in the Building located at 671 Laurel Street, San Carlos, California, which consists of approximately 4,052 leasable square feet (the "**Premises**").

C.    Tenant filed for bankruptcy under chapter 11 in the United States Bankruptcy Court for the Central District of California on December 16, 2022.  During Tenant's bankruptcy case, the Lease was rejected by operation of law under 11 U.S.C. § 365(d)(4) on July 14, 2023.  Following rejection of the Lease, Tenant has remained in possession of and continued to operate its restaurant business at the Premises.

D.    Edmund (Ted) Cutting ("**Cutting**"), who was a co-tenant under the Lease, filed for bankruptcy under chapter 11 in the United States Bankruptcy Court for the Central District of California on August 7, 2023.  During Cutting's bankruptcy case, the Lease was rejected by operation of law under 11 U.S.C. § 365(d)(4) on December 5, 2023.

E.    Notwithstanding rejection of the Lease during Tenant's bankruptcy case, Landlord and Tenant desire to amend the Lease, as set forth herein.

NOW, THEREFORE, in consideration of the foregoing, the parties hereto agree as follows:

1.    <u>Recitals; Defined Terms</u>.  Landlord and Tenant hereby acknowledge and agree that all of the foregoing Recitals are true and correct and are fully incorporated herein.  Except for those terms expressly defined in this Amendment, all initially capitalized terms will have the meanings ascribed to them in the Lease.

2.    <u>Removal of Tenant</u>.  Effective as of December 5, 2023, Cutting shall no longer be a tenant under the Lease and Tenant shall be the sole remaining tenant under the Lease.

3.    <u>Extension of Term</u>.

(a) The Term of the Lease is hereby extended for a period (the "**M-T-M Term**") commencing December 6, 2023 (the "**M-T-M Term Commencement Date**"), and continuing thereafter on a month-to-month basis until such date that is thirty (30) days after delivery of written notice of termination (a "**Termination Notice**") from either Landlord or Tenant to the other ("**Amended Lease Termination Date**"), subject, however, to Tenant's Extension Right, discussed in <u>Section 4</u> herein.  All terms and conditions of the Lease shall apply to the Extension Term, except as otherwise set forth in this Amendment.  Except as expressly set forth in <u>Section 4</u> of this Amendment below, Tenant shall have no

further right to renew or extend the Term of the Lease, and accordingly, Section 2.2 of the Original Lease is hereby deleted in its entirety and shall be of no further force or effect.

(b) Notwithstanding anything to the contrary in the Lease (as amended hereby), Landlord shall have the immediate right from the date of this Amendment, and at all times during the M-T-M Term, to market the Premises for lease to prospective tenants, and in connection therewith shall have the right to enter the Premises to show the same to brokers and prospective tenants in accordance with the terms and provisions of Article 17 of the Original Lease and to place signage along the Laurel Street frontage that the Premises are available for lease.

(c) Upon the Amended Lease Termination Date, Tenant shall immediately vacate and deliver possession of the Premises to Landlord. Landlord and Tenant acknowledge and agree that any and all movable equipment, furniture, trade fixtures, supplies and other personal property (collectively, the "**FF&E**") remaining in the Premises on the Amended Lease Termination Date shall be deemed abandoned by Tenant pursuant to 11 U.S.C. § 554 and Tenant waives any rights it may have under California Civil Code sections 1980 et seq. with respect to such FF&E.

4.    Tenant Extension Right. In the event Landlord delivers a Termination Notice to Tenant, then Tenant shall have the right, by delivery of written notice to Landlord within ten (10) business days after Tenant's receipt of Landlord's Termination Notice, to extend the Term of the Lease on the following terms and conditions (the "**Extension**"): (i) the Term of the Lease shall be extended to April 30, 2030 (the "**Extension Term**"); (ii) Tenant shall pay Base Rent and Tenant's Share of Expenses as set forth in the Original Lease, as amended by the Addendum 1, Assignment and First Amendment; (iii) all other terms and provisions of the Original Lease, as amended by the Addendum 1, Assignment, and First Amendment, except for the removal of Cutting as a co-tenant, shall be applicable during the Extension Term; and (iv) Landlord and Tenant shall enter into, execute and deliver an amendment to the Lease memorializing the foregoing conditions to the Extension.

5.    Rent. Effective as of the M-T-M Term Commencement Date and continuing until the Amended Lease Termination Date, Tenant shall pay Rent for the Premises in an amount equal to Ten Thousand Dollars ($10,000) per month, with such Rent due and payable on or before the 10th day of the calendar month and Rent for the period from the M-T-M Term Commencement Date through December 31, 2023 prorated. During the M-T-M Term, Tenant shall have no obligation to pay Tenant's Share of Expenses.

6.    Liquor License Purchase. Tenant is the owner of Liquor License Number 617630 (the "**Liquor License**") issued by the California Department of Alcoholic Beverage Control (the "**ABC**") for the Premises operating under the business name of "Patxi's Pizza." Upon the Amended Lease Termination Date, Landlord shall have the right, in its sole discretion, to purchase the Liquor License (either in Landlord's own name or the name of Landlord's designee) for a purchase price (the "**Liquor License Purchase Price**") equal to the greater of Fifty Thousand Dollars ($50,000) or the amount of California Department of Tax and Fee Administration sales tax lien against the Liquor License then owing. Within five (5) business days after delivery of Landlord's written notice to Tenant ("**Landlord's Liquor License Transfer Notice**"), Tenant shall execute and deliver to Landlord signed originals of all forms and documents as may be required by the ABC and California Business Escrow Inc. (the "**Escrow Company**") to transfer the Liquor License to Landlord or its designee, including, but not limited to, forms ABC-211A and ABC-227, and all escrow instructions requested by the Escrow Company. Upon receipt of Tenant's forms and documents, Landlord shall deposit the Liquor License Purchase Price into an account held by the Escrow Company, and Landlord or Landlord's designee shall submit the Liquor License transfer application to the ABC. Tenant shall submit all required returns and documents required to obtain releases of any holds placed on the Liquor License, including the hold currently placed on the Liquor License by the California Department of Tax and Fee Administration (if any). Landlord shall pay all application fees,

costs and expenses with respect to the transfer of the Liquor License. Upon the transfer and issuance of the Liquor License to Landlord or Landlord's designee, the Liquor License Purchase Price, less the amount of any claims paid by Escrow Company to Creditors, shall be released by the Escrow Company to Tenant. If the Liquor License is not transferred to Landlord or its designee, then the Liquor License Purchase Price deposited with the Escrow Company shall be returned to Landlord or Landlord's designee. The parties acknowledge that Tenant did not pledge the Liquor License as security for the Lease, a loan or any other agreement, and the transfer contemplated hereunder has been agreed to solely in connection with this Amendment. Tenant's obligation to transfer the Liquor License as set forth herein shall only arise upon the Amended Lease Termination Date. From and after the date of this Amendment, Tenant shall not cancel, surrender or transfer the Liquor License and Tenant shall pay all renewal fees required to keep the Liquor License in full force and effect.

7.    <u>Notices</u>. Notices as discussed in this Amendment, including but not limited to the Termination Notice, notice of Tenant's exercise of the Extension for the Extended Term, and Landlord's Liquor License Transfer Notice, may be delivered by email to Tenant and Landlord, or as otherwise set forth in the Lease.

8.    <u>Waiver of Landlord's Claims in Tenant's Bankruptcy Case</u>. Conditioned upon Tenant vacating and delivering the Premises to Landlord upon the Amended Lease Termination Date and the transfer of the Liquor License to Landlord or Landlord's designee, as provided under this Amendment, Landlord shall waive, release and withdraw its claims in Tenant's bankruptcy case, including Landlord's administrative rent claim under 11 U.S.C. 365(d)(3), Landlord's lease rejection claim under 11 U.S.C. 502(b)(6), and Landlord's claim for unpaid rent and charges owed by Tenant during the bankruptcy case from and after July 14, 2023. For clarification and the avoidance of doubt, Landlord shall only waive its claims in Tenant's bankruptcy case upon the occurrence of the Amended Lease Termination Date and the transfer of the Liquor License to Landlord or Landlord's designee.

9.    <u>Brokers</u>. Landlord and Tenant each represents and warrants to the other that Landlord and Tenant, respectively, have not authorized or employed, or acted by implication to authorize or to employ, any real estate broker or salesman to act for Landlord or Tenant, respectively, in connection with this Amendment. Landlord and Tenant shall each indemnify, defend and hold the other harmless from and against any and all claims as a result of a breach by the indemnifying party of the foregoing representation (including reasonable attorneys' fees, court costs and any commissions, if ultimately owed).

10.    <u>Authority</u>. Tenant hereby covenants and warrants that (a) Tenant is duly incorporated and validly existing under the laws of its state of incorporation, (b) Tenant has and is duly qualified to do business in the state in which the Building is located, (c) subject to Section 11 below, Tenant has full corporate power and authority to enter into this Amendment and to perform all of Tenant's obligations under the Lease, as amended by this Amendment, and (d) each person (and all of the persons if more than one signs) signing this Amendment on behalf of Tenant is duly and validly authorized to do so.

11.    <u>Bankruptcy Court Approval</u>. Except for Landlord's right to immediately market the Premises, Tenant's obligation to pay Rent during the M-T-M Term, and the occurrence of the Amended Lease Termination Date, the effectiveness of this Amendment is expressly conditioned upon Bankruptcy Court approval and authorization in Tenant's bankruptcy case, either pursuant to a noticed motion or confirmed plan of reorganization.

12.    <u>Counterparts</u>. This Amendment may be executed in any number of counterparts, each of which shall be an original and all of which shall be one and the same instrument.

*[No further text and signature page on separate page below]*

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date and year first above written.

**TENANT**:                                              **LANDLORD**:

CCC CONSULTING CORPORATION,          671 LAUREL SAN CARLOS ASSOCIATES, LLC,
a California corporation                          a California limited liability company

By: _____          By: _____
    Name:  Edmund Cutting                          Name:  John A. Baer
    Title:  President                                    Title:  Managing Member


                                677 LAUREL STREET ASSOCIATES, LLC,
                                a California limited liability company

                                By: _____
                                    Name:  John A. Baer
                                  Title:  Managing Member

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
120 Newport Center Drive, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11 DATED DECEMBER 15, 2023** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 15, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Attorneys for Debtor CCC Consulting Corporation:  **James E Till**:  james.till@limnexus.com; david.nealy@limnexus.com; martha.araki@limnexus.com; myrtle.john@limnexus.com
- Subchapter V Trustee:  **Mark M Sharf (TR)**:  mark@sharflaw.com; C188@ecfcbis.com; sharf1000@gmail.com
- Attorneys for Creditor JMS Development Partners, LLC:  **Michael S Greger, William W Huckins**: mgreger@allenmatkins.com; whuckins@allenmatkins.com; clynch@allenmatkins.com; igold@allenmatkins.com; kpreseton@allenmatkins.com
- Attorney for Matthew D. Pham:  **Matthew D. Pham**:  mpham@allenmatkins.com,  mdiaz@allenmatkins.com
- United States Trustee (SA):  ustpregion16.la.ecf@usdoj.gov; **Hatty Yip**:  hattie.k.yip@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the procedures of the Honorable Julia W. Brand, Judge Brand waives application of LBR 5005-2(d) to serve Judge's copies for all documents unless otherwise directed by the Court.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 15, 2023 | Martha Araki | */s/ Martha Araki* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 2

# Notice

James E. Till (State Bar No. 200464)
TILL LAW GROUP
120 Newport Center Drive
Newport Beach, CA 92660
Telephone: (949) 524-4999
Email: james.till@till-lawgroup.com

Attorneys for Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CCC CONSULTING CORPORATION,<br><br>        Debtor and<br>        Debtor-in-Possession. | Case No. 2:22-bk-16853-WB<br><br>Chapter 11<br><br>Subchapter V<br><br>**NOTICE OF:**<br>**(1) PLAN CONFIRMATION HEARING; AND**<br>**(2) DATES AND DEADLINES RELATED TO PLAN CONFIRMATION HEARING**<br><br>**Hearing Information:**<br>Date:          February 15, 2024<br>Time:         10:00 a.m.<br>Courtroom:  Courtroom 1375<br>               255 E. Temple Street<br>               Los Angeles, CA 90012 |

**TO ALL CREDITORS OF CCC CONSULTING CORPORATION, THE SUBCHAPTER V TRUSTEE, AND THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that pursuant to the scheduling and case management conference held on November 2, 2023, the Court issued the following dates/deadlines in the above-captioned chapter 11 subchapter V case of CCC Consulting Corporation, debtor and debtor-in-possession herein (the "Debtor").

**PLEASE TAKE FURTHER NOTICE** that enclosed with this Notice are the following documents (collectively, the "Solicitation Materials"): (i) the Second Amended Plan of Reorganization for Small Business Under Chapter 11, dated December 15, 2023 (the "Plan"); and (ii) for those parties entitled to vote on the Plan, a ballot to accept or reject the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Court has fixed the following dates:

1.      **January 16, 2024** is the voting deadline ("<u>Voting Deadline</u>") by which all ballots accepting or rejecting the Plan must be received by counsel for Debtor.  Ballots should be sent to: James E. Till, Esq., Till Law Group, 120 Newport Center Drive, Newport Beach, CA 92660, by mail, overnight, hand delivery, or email (james.till@till-lawgroup.com) so that they are received by the Voting Deadline.

2.      Oppositions, if any, to the confirmation of the Plan shall be filed no later than **January 16, 2024**, with the Bankruptcy Court, and served upon:  (i) the Debtor's counsel whose name and address appear in the upper-left hand corner of this notice; (ii) the subchapter V trustee, Mark M. Sharf, Esq., 6080 Center Dr., Suite 600, Los Angeles, CA 90045; and the Office of the United States Trustee, Attn:  Dare Law, Attorney, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017, so that it is received by January 16, 2024.

3.      **January 30, 2024** is the deadline by which the Debtor shall file and serve its brief in support of confirmation of the Plan (the "<u>Confirmation Brief</u>"), including ballot tabulation, and any response(s) to objections to the Plan.

4.      The hearing on confirmation of the Plan shall be held on **February 15, 2024**, at **10:00 a.m.** prevailing Pacific Time (the "<u>Confirmation Hearing</u>"), in Courtroom 1375, of the United States Bankruptcy Court, 255 East Temple Street, Los Angeles, California 90012, before the Honorable Julia W. Brand, United States Bankruptcy Judge.  Pursuant to Judge Brand's Phone/Video Appearance procedures, the hearing will be held in person.

**PLEASE TAKE FURTHER NOTICE** that the failure to timely file and serve an objection to the Plan by the **January 16, 2024** deadline may be deemed by the Court to be consent to the confirmation of the Plan.

DATED:  December 15, 2023            TILL LAW GROUP

By:_ */s/ James E. Till*_____
     James E. Till
Attorneys for CCC Consulting Corporation, Debtor
And Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
120 Newport Center Drive, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **Notice of:  (1) Plan Confirmation Hearing; and (2) Dates and Deadlines Related to Plan Confirmation Hearing** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 15, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Attorneys for Debtor CCC Consulting Corporation:  **James E Till**:  james.till@limnexus.com; david.nealy@limnexus.com; martha.araki@limnexus.com; myrtle.john@limnexus.com
- Subchapter V Trustee:  **Mark M Sharf (TR)**:  mark@sharflaw.com; C188@ecfcbis.com; sharf1000@gmail.com
- Attorneys for Creditor JMS Development Partners, LLC:  **Michael S Greger, William W Huckins**: mgreger@allenmatkins.com; whuckins@allenmatkins.com; clynch@allenmatkins.com; igold@allenmatkins.com; kpreseton@allenmatkins.com
- Attorney for Matthew D. Pham:  **Matthew D. Pham**:  mpham@allenmatkins.com,  mdiaz@allenmatkins.com
- United States Trustee (SA):  ustpregion16.la.ecf@usdoj.gov; **Hatty Yip**:  hattie.k.yip@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the procedures of the Honorable Julia W. Brand, Judge Brand waives application of LBR 5005-2(d) to serve Judge's copies for all documents unless otherwise directed by the Court.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| December 15, 2023 | Martha Araki | */s/ Martha Araki* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 3

# Ballots

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CCC CONSULTING CORPORATION,<br><br>                  Debtor and<br>                  Debtor-in-Possession. | Case No. 2:22-bk-16853-WB<br><br>Chapter 11<br><br>Subchapter V<br><br>**BALLOT – CLASS 1**<br><br>**FOR ACCEPTING OR REJECTING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11, DATED DECEMBER 15, 2023** |

      *Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11*, dated December 15, 2023, as amended or supplemented and including all exhibits and supplements thereto (the "Plan"), can be confirmed by the Court and thereby made binding on you whether or not you vote on the Plan.  **By this ballot, you will vote to accept or reject the Plan.**  The Plan has been sent to you with this ballot.  You should review the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.  Only timely completed and returned ballots will be counted.  To have your vote count, you must complete and return this ballot as directed below.

      The undersigned, a holder of a **Class 1 Claim (Priority Claim)** against the above-named Debtor in the unpaid principal amount of $_____

      ☐      Accepts the Plan.

      ☐      Rejects the Plan.

Dated: _____

                                _____
                                  (Signature of Person executing Ballot)

                                  _____
                                  (Print or type name and title (if any) of person signing)

                                  _____
                                  (Print or type name of Claimant)

                                  _____
                                  (Print or type address)

                                  _____
                                  (City, State and Zip)

TO BE COUNTED, THIS BALLOT MUST BE RECEIVED BY JAMES E. TILL, ESQ., TILL LAW GROUP, 120 NEWPORT CENTER DRIVE, NEWPORT BEACH, CA 92660 IN SUCH A MANNER THAT IT IS RECEIVED BY NO LATER THAN **JANUARY 16, 2024.**  THE BALLOT MAY ALSO BE ACCEPTED BY EMAIL AT james.till@till-lawgroup.com.

<u>A Ballot Does Not Constitute a Valid Proof of Claim in This Bankruptcy Case</u>

1

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CCC CONSULTING CORPORATION,<br><br>    Debtor and<br>    Debtor-in-Possession. | Case No. 2:22-bk-16853-WB<br><br>Chapter 11<br><br>Subchapter V<br><br>**BALLOT – CLASS 2**<br><br>**FOR ACCEPTING OR REJECTING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11, DATED DECEMBER 15, 2023** |

   *Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11*, dated December 15, 2023, as amended or supplemented and including all exhibits and supplements thereto (the "Plan"), can be confirmed by the Court and thereby made binding on you whether or not you vote on the Plan.  **By this ballot, you will vote to accept or reject the Plan**.  The Plan has been sent to you with this ballot.  You should review the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.  Only timely completed and returned ballots will be counted.  To have your vote count, you must complete and return this ballot as directed below.

   The undersigned, a holder of a **Class 2 Claim (Secured Claim of the U.S. Small Business Administration)** against the above-named Debtor in the unpaid principal amount of $_____

    ☐  Accepts the Plan.

    ☐  Rejects the Plan.

Dated: _____

           _____
           (Signature of Person executing Ballot)

           _____
           (Print or type name and title (if any) of person signing)

           _____
           (Print or type name of Claimant)

           _____
           (Print or type address)

           _____
           (City, State and Zip)

TO BE COUNTED, THIS BALLOT MUST BE RECEIVED BY JAMES E. TILL, ESQ., TILL LAW GROUP, 120 NEWPORT CENTER DRIVE, NEWPORT BEACH, CA 92660 IN SUCH A MANNER THAT IT IS RECEIVED BY NO LATER THAN **JANUARY 16, 2024**.   THE BALLOT MAY ALSO BE ACCEPTED BY EMAIL AT james.till@till-lawgroup.com.

   A Ballot Does Not Constitute a Valid Proof of Claim in This Bankruptcy Case

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CCC CONSULTING CORPORATION,<br><br>        Debtor and<br>        Debtor-in-Possession. | Case No. 2:22-bk-16853-WB<br><br>Chapter 11<br><br>Subchapter V<br><br>**BALLOT – CLASS 3**<br><br>**FOR ACCEPTING OR REJECTING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11, DATED DECEMBER 15, 2023** |

     *Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11*, dated December 15, 2023, as amended or supplemented and including all exhibits and supplements thereto (the "Plan"), can be confirmed by the Court and thereby made binding on you whether or not you vote on the Plan.  **By this ballot, you will vote to accept or reject the Plan.**  The Plan has been sent to you with this ballot.  You should review the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.  Only timely completed and returned ballots will be counted.  To have your vote count, you must complete and return this ballot as directed below.

     The undersigned, a holder of a **Class 3 Claim (Claim of ODK Capital, LLC (formerly Celtic Bank)** against the above-named Debtor in the unpaid principal amount of $_____

     ☐     Accepts the Plan.

     ☐     Rejects the Plan.

Dated: _____

                    _____
                    (Signature of Person executing Ballot)

                    _____
                    (Print or type name and title (if any) of person signing)

                    _____
                    (Print or type name of Claimant)

                    _____
                    (Print or type address)

                    _____
                    (City, State and Zip)

TO BE COUNTED, THIS BALLOT MUST BE RECEIVED BY JAMES E. TILL, ESQ., TILL LAW GROUP, 120 NEWPORT CENTER DRIVE, NEWPORT BEACH, CA 92660 IN SUCH A MANNER THAT IT IS RECEIVED BY NO LATER THAN **JANUARY 16, 2024.**  THE BALLOT MAY ALSO BE ACCEPTED BY EMAIL AT james.till@till-lawgroup.com.

     <u>A Ballot Does Not Constitute a Valid Proof of Claim in This Bankruptcy Case</u>

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CCC CONSULTING CORPORATION,<br><br>          Debtor and<br>          Debtor-in-Possession. | Case No. 2:22-bk-16853-WB<br><br>Chapter 11<br><br>Subchapter V<br><br>**BALLOT – CLASS 4**<br><br>**FOR ACCEPTING OR REJECTING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11, DATED DECEMBER 15, 2023** |

      *Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11*, dated December 15, 2023, as amended or supplemented and including all exhibits and supplements thereto (the "Plan"), can be confirmed by the Court and thereby made binding on you whether or not you vote on the Plan.  **By this ballot, you will vote to accept or reject the Plan.**  The Plan has been sent to you with this ballot.  You should review the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.  Only timely completed and returned ballots will be counted.  To have your vote count, you must complete and return this ballot as directed below.

      The undersigned, a holder of a **Class 4 Claim (Claim of Pinnacle Business Funding LLC)** against the above-named Debtor in the unpaid principal amount of $_____

      ☐      Accepts the Plan.

      ☐      Rejects the Plan.

Dated: _____

_____
(Signature of Person executing Ballot)

_____
(Print or type name and title (if any) of person signing)

_____
(Print or type name of Claimant)

_____
(Print or type address)

_____
(City, State and Zip)

TO BE COUNTED, THIS BALLOT MUST BE RECEIVED BY JAMES E. TILL, ESQ., TILL LAW GROUP, 120 NEWPORT CENTER DRIVE, NEWPORT BEACH, CA 92660 IN SUCH A MANNER THAT IT IS RECEIVED BY NO LATER THAN **JANUARY 16, 2024.**  THE BALLOT MAY ALSO BE ACCEPTED BY EMAIL AT james.till@till-lawgroup.com.

      A Ballot Does Not Constitute a Valid Proof of Claim in This Bankruptcy Case

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CCC CONSULTING CORPORATION,<br><br>        Debtor and<br>        Debtor-in-Possession. | Case No. 2:22-bk-16853-WB<br><br>Chapter 11<br>Subchapter V<br><br>**BALLOT – CLASS 5**<br><br>**FOR ACCEPTING OR REJECTING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11, DATED DECEMBER 15, 2023** |

    *Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11*, dated December 15, 2023, as amended or supplemented and including all exhibits and supplements thereto (the "Plan"), can be confirmed by the Court and thereby made binding on you whether or not you vote on the Plan. **By this ballot, you will vote to accept or reject the Plan.** The Plan has been sent to you with this ballot. You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote. Only timely completed and returned ballots will be counted. To have your vote count, you must complete and return this ballot as directed below.

    The undersigned, a holder of a **Class 5 Claim (Claim of Kalamata Capital LLC)** against the above-named Debtor in the unpaid principal amount of $_____

      ☐    Accepts the Plan.

      ☐    Rejects the Plan.

Dated: _____

                       _____
                       (Signature of Person executing Ballot)

                       _____
                       (Print or type name and title (if any) of person signing)

                       _____
                       (Print or type name of Claimant)

                       _____
                       (Print or type address)

                       _____
                       (City, State and Zip)

TO BE COUNTED, THIS BALLOT MUST BE RECEIVED BY JAMES E. TILL, ESQ., TILL LAW GROUP, 120 NEWPORT CENTER DRIVE, NEWPORT BEACH, CA 92660 IN SUCH A MANNER THAT IT IS RECEIVED BY NO LATER THAN **JANUARY 16, 2024.** THE BALLOT MAY ALSO BE ACCEPTED BY EMAIL AT james.till@till-lawgroup.com.

<u>A Ballot Does Not Constitute a Valid Proof of Claim in This Bankruptcy Case</u>

                    BALLOT – CLASS 5

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CCC CONSULTING CORPORATION,<br><br>          Debtor and<br>          Debtor-in-Possession. | Case No. 2:22-bk-16853-WB<br><br>Chapter 11<br><br>Subchapter V<br><br>**BALLOT – CLASS 6**<br><br>**FOR ACCEPTING OR REJECTING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11, DATED DECEMBER 15, 2023** |

     *Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11*, dated December 15, 2023, as amended or supplemented and including all exhibits and supplements thereto (the "Plan"), can be confirmed by the Court and thereby made binding on you whether or not you vote on the Plan.  **By this ballot, you will vote to accept or reject the Plan.**  The Plan has been sent to you with this ballot.  You should review the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.  Only timely completed and returned ballots will be counted.  To have your vote count, you must complete and return this ballot as directed below.

     The undersigned, a holder of a **Class 6 Claim (General Unsecured Claims)** against the above-named Debtor in the unpaid principal amount of $_____

     ☐    Accepts the Plan.

     ☐    Rejects the Plan.

Dated: _____

_____
(Signature of Person executing Ballot)

_____
(Print or type name and title (if any) of person signing)

_____
(Print or type name of Claimant)

_____
(Print or type address)

_____
(City, State and Zip)

TO BE COUNTED, THIS BALLOT MUST BE RECEIVED BY JAMES E. TILL, ESQ., TILL LAW GROUP, 120 NEWPORT CENTER DRIVE, NEWPORT BEACH, CA 92660 IN SUCH A MANNER THAT IT IS RECEIVED BY NO LATER THAN **JANUARY 16, 2024.**  THE BALLOT MAY ALSO BE ACCEPTED BY EMAIL AT james.till@till-lawgroup.com.

<u>A Ballot Does Not Constitute a Valid Proof of Claim in This Bankruptcy Case</u>

# EXHIBIT 4

# Service Parties

California Dept Tax and Fee Admin
Attn Maria Hales
3321 Power Inn Rd Ste 210
Sacramento, CA 95826-3893
**Class 1**

California Dept. of Tax and Fee Admin
Collection Support Bureau, MIC: 55
PO Box 942879
Sacramento, CA  94279-0055
**Class 1**

California Dept. of Tax and Fee Admin
Collections Support Bureau, MIC: 55
PO Box 942879
Sacramento, CA 94279-0001
**Class 1**

City And County Of Denver
Attn Attention Bankruptcy
201 W Colfax Ave
Dept 1009 MC 1001
Denver Co 80202-5329
**Class 1**

City and County of Denver
PO Box Box 660861
Dallas, TX 75266-0861
**Class 1**

Colorado Department of Revenue
Attn: Bankruptcy Unit Rm 104
1881 Pierce St
Lakewood, CO 80214-1407
**Class 1**

Colorado Department of Revenue
P O Box 17087
Denver, CO 80217-0087
**Class 1**

Employment Development Dept
Bankruptcy Unit MIC 92E
PO Box 826880
Sacramento, CA 94280-0001
**Class 1**

Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA 95812-2952
**Class 1**

Internal Revenue Service
PO Box Box 7346
Philadelphia, PA 19101-7346
**Class 1**

State Board of Equalization
Account Information Group MIC 29
PO Box 942879
Sacramento, CA 94279-0029
**Class 1**

Gil Hopenstand
US Small Business Administration
312 N Spring Street, 5th Fl
Los Angeles, CA 90012-4701
**Class 2**

U S Small Business Administration
312 N Spring St 5th Floor
Los Angeles Ca 90012-2678
**Class 2**

ODK Capital, LLC
1400 Broadway
New York, NY 10018-5300
**Class 3**

Celtic Bank
268 State St #300
Salt Lake City, UT 84111-5314
**Class 3**

Pinnacle Business Funding LLC
1202 Ave U Ste 1115
Brooklyn, NY 11229-4107
**Class 4**

Kalamata Capital LLC
1545 U.S. 202, Suite 101
Pomona, NY 10970-2951
**Class 5**

Kalmata Capital Inc
Attn Ariel Bouskila Esq
80 Broad St Ste 3303
New York, NY 10004-2845
**Class 5**

**PACKAGE CONTENTS:**

**RESPECTIVE BALLOT(S)**
**PLAN**
**NOTICE**

**PACKAGE CONTENTS:**
**CLASS 6 BALLOT**
**PLAN**
**NOTICE**

JMS Development Partners, LLC
c/o William W. Huckins
Allen Matkins LLP
Three Embarcadero Center, 12 FL
San Francisco, CA 94111-4037

671 Laurel San Carlos Associates LLC
677 Laurel Street Associates, LLC
c/o JMS Development Partners
1140 Laurel Street, Ste. B
San Carlos, CA 94070-5054

AFLAC
Attn: Rosario Ronquillo
4500 Park Granada Blvd #202
Calabasas, CA 91302-1666

AMEX - Business Platinum
Rausch Sturm LLP
250 N Sunnyslope Rd Ste 300
Brookfield, WI 53005-4824

Ace Foods LLP
Attn Marie C Mirch Esq
1180 Rosecrans St Ste 104-557
San Diego, CA 92106-2660

American Express - Business Gold
Reward
Rausch Sturm LLP
250 N Sunnyslope Rd Ste 300
Brookfield, WI 53005-4824

American Express - Plum
Rausch Sturm LLP
250 N Sunnyslope Rd Ste 300
Brookfield, WI 53005-4824

Aramark
PO Box 101179
San Mateo, CA 94403

Aramark
PO Box 731676
Dallas, TX 75373-1676

Berkovitch & Bouskila, PLLC
1545 U.S. 202, Suite 101
Pomona, NY 10970-2951

Beverage Distributors Company LLC
Attn Mike Stein
3980 Central Park Blvd
Denver Co 80238-3803

Christopher Vella
RP Commercial
5318 E 2nd St #303
Long Beach, CA 90803-5324

Coors Distributing
Attn: Blair Lynzie
5400 Pecos
Denver, CO 80221-6404

Cutting Concepts Corporation
Attn Steve Luan Esq
2451 Huntington Dr
San Marino, CA 91108-2644

Daly Property Management
9743 Oakmore Rd
Los Angeles, CA 90035-4023

Denver Beverage
Attn: Nick Christensen
353 West 56th Ave
Denver, CO 80216-1621

Denver Water
P O Box 173343
Denver, CO 80217-3343

Devils Canyon Brewing Company
935 Washington St
San Carlos, CA 94070-5316

Direct TV
P O Box 5006
Carol Stream, IL 60197-5006

Essential Plastics
Attn: Milena Nichols
4901 Nome St
Denver, CO 80239-2715

Golden Brands
245 S Spruce Ave #900
South San Francisco, CA 94080-4587

IFS
5496 Lindbergh Lane
Bell , CA 90201-6409

Image Systems Signs Inc
Attn: Sergio Meiron
870 Crenshaw Blvd Unit 101
Los Angeles, CA 90005-5202

JMS Development Partners
Angi DiPaola
P O Box 1334
San Carlos, CA 94070-7334

JMS Development Partners
Box 1334
San Carlos, CA 94070-7334

Law Office of Patrick C Carroll
Attn Patrick Carroll Esq
6440 Oak Canyon Ste 250
Irvine, CA 92618-5211

Matagrano Inc
R. Fernandez
P O Box 2588
South San Francisco, CA 94083-2588

Patxis Limited
Attn Michael Nakhleh
466 E Foothill Blvd #356
Altadena, CA 91001

Produce Available Inc
910 Commercial Ave
Oxnard, CA 93030-7232

Professional Building Care Inc
131 Industrial Way Ste 15
Belmont, CA 94002-8209

Professional Building Care, Inc
1970 Broadway #600
Oakland, CA 94612-2218

RP Commercial
5318 E 2nd St #303
Long Beach, CA 90803-5324

Redondo Investment Company
Attn Claudia Mourad Esq
29 Orchard Rd
Lake Forest, CA 92630-8300

Reid & Wise LLP
Attn Robert K Lu Esq
633 W Fifth St 26th FL
Los Angeles, CA 90071-2053

Republic Service
P O Box 78839
Phoenix, AZ 85062-8839

Seth Lindauer
Attn Marie Mirch Esq
1180 Rosecrans St Ste 104-557
San Diego, CA 92106-2660

SoCalGas
PO Box 30337
Los Angeles  CA 90030-0337

Southern Glazers
Attn Thomas Koehorst
PO Box 742313
Los Angeles, CA 90074-2313

Southern Glaziers of CO
Attn: Dan Haveck
22800 E 19th Ave
Aurora, CO 80019-3717

US Foods
P O Box 394766
San Francisco, CA 94139-4766

US Foods, Inc.
Brian Shaw
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606-1770

Wesierski & Zurek LLP
Attn Claudia Mourad Esq
29 Orchard Rd
Lake Forest, CA 92630-8300

Xcel Energy
Attn Attn Bankruptcy Department
PO Box 9477
Minneapolis Mn 55484-0001

CCC Capital Inc
CCC Entertainment Corp
CCC Livinroom Corporation
CCC Patxis Corporation
CCC Patxis Pizza 2 Corp

Cutting Catering
Slaters 50 50
Slaters 50/50
Slaters 50/50 Bacon Burgers Beer
Stonefire Pizza Co

Edmunds
Stonefire Pizza Company
8028 Harrison St
Paramount, CA 90723-5452

**PACKAGE CONTENTS:**
**PLAN AND NOTICE ONLY**


Alvaro Alvarez
519 Anacapa St Apt B
Santa Barbara, CA 93101

Andres S Baisch
955 Cherry St
San Carlos, CA 94070-3204

Andrew McCauley
815 E Fremont Ave
Sunnyvale, CA 94087-2915


Andrew Osorio
1 Plaza View Ln
San Mateo, CA 94404-5114

Andy Top
721 Whipple Ave
Redwood City, CA 94063-1228

Aubriana A Campbell
3135 Campus Dr #106
San Mateo, CA 94403-3130


Brenda Rodriguez
5218 Keo Dr
Santa Barbara, CA 93111-2104

Carlos Gasga
671 Laurel St Apt 103B
San Carlos, CA 94070-3111

Celeste Di Maria
620 W Gutierrez St
Santa Barbara, CA 93101-4569


Claro Pirir
145 Roosevelt Ave #36
Redwood City, CA 94061-2359

Cristian Carballo Valladares
712 Madison Ave Apt A
Redwood City, CA 94061-1645

Danta Sosa
712A Madison Ave
Redwood City, CA 94061-1645


Donovin P Caldwell
129 Leanne Ln
Concord, CA 94518-2010

Edgar Aguilar
1244 Cherry St Apt 3
San Carlos, CA 94070-3126

Edmund Cutting
604 Wrede Way
West Covina, CA 91791-2351


Elizabeth Bertin
1814 Robbins St
Santa Barbara, CA 93101-4628

Erick Top
721 Whipple Ave
Redwood City, CA 94063-1228

Gerson Top
721 Whipple St
Redwood City, CA 94063-1228


Isaac A Cifuentes
1024 Adams St Apt 1
Redwood City, CA 94061-2352

Jacob Macias
1024 Palmetto Way Unit B
Carpinteria, CA 93013-2855

Jade Kung
22627 Myrtle Circle
Hayward, CA 94541-6335


Jesus Avina
5218 Mono Dr
Santa Barbara, CA 93111-2112

Jordan Scott
325 S Los Robles Ave #3
Pasadena, CA 91101-3218

Kevin E Carballo Valladares
810 Coleman Ave
Menlo Park, CA 94025-2451


Levi Chagoya
130 S Soledad
Santa Barbara, CA 93103-3587

Mackenzie Clarke
163 Silver Ave
Redwood City, CA 94061

Mara Parau
416 E Valerio St
Santa Barbara, CA 93101-1119

Mathias White
8529 Arcade Oaks Ct
Orangevale, CA 95662-6011

Matthew Lloyd
620 Cassia St
Redwood City, CA 94063-2018

Maurilio Munoz-Severiano
2102 Bath St
Santa Barbara, CA 93105-4357

Narciso Suarez
122 Hurlbut St
Pasadena, CA 91105-4033

Noah Sanders
779 Camino Pescadero
Goleta, CA 93117-4620

Patsyann Sutton
964 E Badillo St
Covina, CA 91724-2950

Raquel Gonzalez
2351 Coral St
Los Angeles, CA 90031-2916

Ruben Flores
5362 Holister Ave Apt 11
Santa Barbara, CA 93111-2330

Ryan Patrick Sharkey
212 W Valerio St
Santa Barbara, CA 93101-2930

Vance A Brown
1519 San Pascual St Unit A
Santa Barbara, CA 93101-7803

LIMNEXUS LLP
Attn Lisa Yang Esq
707 Wilshire Blvd. 46th Fl.
Los Angeles, CA 90017-3501